UNITED STATES of America, Appellee

v.

**Darnell A. CATLETT, Appellant.**

**Nos. 93–3189 & 93–3194.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 4, 1996.

Decided Oct. 11, 1996.

Lisa B. Wright, Washington, DC, argued the causes for appellants. A.J. Kramer, Federal Public Defender, and Allen E. Burns, Assistant Federal Public Defender at the time the briefs were filed, Washington, DC, were on the briefs for appellant Derrick J. McAllister. James E. McCollom, Jr., appointed by the court, filed the briefs for appellant Darnell A. Catlett.

Ronald W. Sharpe, Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, Washington, DC, were on the brief. Elizabeth Trosman, and Elisabeth Poteat, Assistant United States Attorneys, Washington, DC, entered appearances.

Before: EDWARDS, Chief Judge, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Appellants Darnell Catlett and Derrick McAllister were charged with (1) distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; (2) possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; and (3) having used or carried a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). After a mistrial in which the jury could not reach a verdict, Catlett and McAllister were retried and found guilty on all charges.

Both appellants claim (1) that they received ineffective assistance of counsel when their attorneys failed to object to a police officer's testimony as both a "fact" and "expert" witness on the ground that the officer's qualification as an expert would unfairly bolster his credibility as a fact witness;

and (2) that their trial was rendered fundamentally unfair by the prosecutor's closing arguments. In addition, Catlett claims (1) that, because the police lacked probable cause to arrest him, the District Court erred in denying his suppression motion; and (2) that there was insufficient evidence to support his convictions for distribution and possession with intent to distribute cocaine base. Finally, appellants contend, and the Government concedes, that Catlett's and McAllister's convictions for using a firearm during a drug trafficking offense are invalid under *Bailey v. United States*, —— U.S. ——, ——, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995) (holding that the Government must show "active employment" of a gun to prove "use" within the meaning of § 924(c)).

We find that Catlett and McAllister did not receive ineffective assistance of counsel. The representation afforded by counsel is not constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), simply because Catlett and McAllister believe that litigation strategies other than the ones employed by counsel might have been more successful. More importantly, even if counsel were somehow negligent in failing to object to the officer's dual testimony as both a fact and expert witness, appellants have not shown that they were prejudiced by the alleged shortcoming.

Nor do we find that the prosecutor's closing arguments rendered appellants' trial fundamentally unfair. Appellants challenge two comments by the prosecutor, one of which allegedly disparaged defense counsel and the other of which allegedly shifted the burden of proof to the defense and infringed on appellants' right to remain silent at trial. We find that neither comment was improper. Additionally, although the issue of probable cause to arrest Catlett is a close one, the record supports a finding that the police did have probable cause. We also find that sufficient evidence supported Catlett's convictions for distribution and possession with intent to distribute cocaine base. Finally, we agree with the parties that appellants' convictions under 18 U.S.C. § 924(c) must be reversed in

light of *Bailey*, and the case remanded for resentencing.

## I. BACKGROUND

On August 26, 1992, at approximately 5:00 p.m., a team of Metropolitan Police Department ("MPD") undercover narcotics officers, including Officers Gregory Bush and Victor Graves, went to the area of First Street and Rhode Island Avenue in Northwest Washington, D.C. to locate and arrest persons involved in the illegal distribution of drugs. Officer Bush, who carried two MPD-issued twenty-dollar bills whose serial numbers he had recorded, walked approximately one block east to the unit block of T Street, N.W. Officer Graves, who was acting as a "spotter," remained in his car to watch Bush and observe any undercover drug transactions.

Just as Officer Bush arrived in the unit block of T Street, N.W., he was approached by a man who identified himself as James Pittiman. Pittiman greeted Bush warmly and offered to help him buy drugs. Officer Bush asked Pittiman to help him buy two "twenties," meaning two rocks of crack cocaine which typically sell for $20 per rock. Pittiman agreed and led Bush a few yards up T Street to a man later identified as Derrick McAllister. Pittiman spoke briefly to McAllister, asking him, "Can you hook me up; can you get me something?" McAllister gestured toward an open alley that ran perpendicular to T Street and told Pittiman and Officer Bush to wait for him there.

Before entering the alley, Officer Bush and Pittiman went inside the T Street Market, a corner grocery store, where Bush exchanged one of the twenty-dollar bills he was carrying for a ten-dollar bill and two five-dollar bills. Bush promised to give Pittiman five dollars if Pittiman could get McAllister to give him two "twenties" for $35. Bush and Pittiman then went into the alley and waited for McAllister.

Meanwhile, Officer Graves, who had observed Officer Bush meet and talk with Pittiman and had seen Pittiman lead Bush to McAllister, continued watching McAllister. Officer Graves observed McAllister walk a few feet westbound on T Street, where he summoned and was joined by Darnell Cat-

lett. Catlett and McAllister then immediately walked together toward a burgundy Pontiac that was parked on the north side of T Street.

From a distance of approximately 120 to 180 feet, Officer Graves saw McAllister enter the front passenger side of the car and reach into the area around the armrest, while Catlett opened and reached into the left side of the trunk. After several seconds, McAllister emerged from the inside of the car, and he and Catlett then walked together on T Street toward the alley where Pittiman and Officer Bush were waiting. Officer Graves could not see whether either McAllister or Catlett had removed anything from the car.

As McAllister and Catlett walked past Officer Graves's car, Catlett made eye contact with Graves. As Graves continued watching the men through his rear view mirror, he saw Catlett turn around and look back at his car. Once Catlett and McAllister had walked into the alley, Officer Graves moved his car up near the mouth of the alley so that he could watch what transpired there.

Inside the alley, McAllister and Catlett met with Pittiman and Officer Bush. Catlett stood at McAllister's side as McAllister handed Pittiman two pieces of white, rock-like substance from a plastic bag. Pittiman then handed McAllister the $35 that Officer Bush had given him. Once McAllister had received the money, McAllister and Catlett walked out of the alley. Officer Bush then handed Pittiman the five dollars he had promised to give him if he could procure two "twenties" for $35.

As Officer Bush left the alley, he signaled to Officer Graves and the arrest team that a drug sale had been completed. Officer Graves broadcast a "lookout" description of Pittiman, McAllister, and Catlett. Meanwhile, Officer Bush performed a field test on the rocks he had received, which produced a positive result for cocaine base.

Members of the MPD narcotics team who heard Officer Graves's "lookout" description stopped Pittiman, McAllister, and Catlett and detained them until Officers Bush and Graves could identify whether they were the suspects. Upon seeing the persons who had been detained, Officer Bush confirmed that Pittiman and McAllister had actually conducted the transaction and that Catlett had been present. Officer Bush was unclear about Catlett's exact role. Officer Graves, however, also positively identified the three suspects and stated that his observations of Catlett justified arresting him.

Thereafter, all three suspects were placed under arrest and searched. The police recovered $35 from Catlett, consisting of a twenty-dollar bill, a ten-dollar bill, and a five-dollar bill, the same amount and combination of bills that Officer Bush had used to purchase the cocaine. Moreover, the serial number of the twenty-dollar bill matched that of the prerecorded MPD funds Officer Bush had used to make the purchase.

The police then searched the burgundy Pontiac into which Catlett and McAllister had reached just prior to entering the alley where the drug transaction was completed. From under the arm rest in the passenger compartment, the police recovered a plastic bag containing ten ziplock bags of crack cocaine, which it was later determined amounted to 6.29 grams of cocaine base, and a nine millimeter pistol. From the left side of the trunk, police recovered a cardboard shoe box containing two guns—a Mac 10 and a loaded .357 Magnum.

Prior to trial, Catlett moved to suppress the money recovered from him at the time of his arrest and any out-of-court identifications, arguing that the police lacked probable cause to arrest him. The District Court determined that the police had probable cause to arrest Catlett before he was searched. The District Court, therefore, denied Catlett's motion to suppress.

At trial, Officer Graves, who appeared as a prosecution witness, began his testimony by describing his experiences as a narcotics officer with the MPD. He was then asked about the typical pattern of operation of street-level drug dealers, the roles played by various participants in a drug organization, the counter-surveillance measures used by drug dealers, and dealers' use of a "stash." Defense counsel objected that this was "opinion" testimony that Graves could not offer unless he was qualified as an expert. Counsel stated

their belief that Graves was not an expert and pointed out that he had not been qualified as an expert at the first trial. The District Court, however, qualified Graves as an expert, after which Graves testified that the sale of drugs typically involves a host of players, including "runners," who solicit customers; "jugglers" or "holders," who watch the drugs, retrieve drugs from the stash for delivery to customers, and hold the money received from purchases; and "enforcers," who threaten and use violence to protect against robberies. Officer Graves testified that he believed that McAllister might be a runner or juggler and Catlett might be a juggler or enforcer. Officer Graves also testified that street-level drug dealers store their drugs in a place referred to as the "stash" and that cars are often used for that purpose. Finally, Officer Graves testified that Catlett's actions—making eye contact with Graves as he walked past Graves's car and then turning around to look back at the car—were consistent with the kind of counter-surveillance often conducted by drug dealers. Defense counsel did not object to Graves's testimony after he had been qualified as an "expert."

The Government presented additional expert testimony on the street-level sale of narcotic drugs from Officer David Stroud. Stroud testified that in order to avoid detection, members of street-level drug organizations divide their duties. Typically, one person holds or watches the stash, another person holds the money, and still another person protects the stash and the money by acting as the enforcer. Stroud noted that sometimes two or more roles are combined in order to save money on personnel. He further testified that weapons commonly used by drug dealers include Mac 10s and .357 Magnums.

Appellants Catlett and McAllister presented no evidence at trial.

## II. Discussion

### A. *Ineffective Assistance of Counsel*

In order to make out a claim of ineffective assistance of counsel, Catlett and McAllister must show two things. "First, [they] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, [Catlett and McAllister] must show that the deficient performance prejudiced the[ir] defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

■ *Strickland* makes clear that the standard for constitutionally effective representation is not overly rigorous:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case.

*Id.* at 689, 104 S.Ct. at 2065 (internal quotation marks and citations omitted). Thus, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690, 104 S.Ct. at 2066.

Catlett and McAllister claim that their respective attorneys were ineffective in failing to object to Officer Graves's testimony as both a fact and expert witness. The D.C. Court of Appeals has prohibited dual testimony, because when an officer is qualified as an expert this may unfairly bolster his testi-

mony as a fact witness. *See, e.g., Beach v. United States,* 466 A.2d 862, 864–65 (D.C.App.1983). This court has recognized that the *Beach* rule is well-established in the local courts and has commented on the importance of maintaining consistency in the law between the federal and local courts. *United States v. Thomas,* 896 F.2d 589, 591 (D.C.Cir.1990). However, we have never adopted the rule that dual testimony as both a fact and expert witness is improper. *See, e.g., United States v. Walls,* 70 F.3d 1323, 1327 n. 1 (D.C.Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996), *and cert. denied,* — U.S. ——, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996); *United States v. Spriggs,* 996 F.2d 320, 325 (D.C.Cir.), *cert. denied,* 510 U.S. 938, 114 S.Ct. 359, 126 L.Ed.2d 323 (1993); *Thomas,* 896 F.2d at 591.

■ In this case, it appears that Officer Graves was formally qualified as an expert as a result of defense counsel's strategic decisions. Graves began his testimony by describing his experiences as a narcotics officer with the MPD. He was then asked a number of questions about the typical operations of street-level drug dealers. Defense counsel objected that this was "opinion" testimony that Graves could not offer unless he was qualified as an expert. Counsel stated their belief that Graves was not an expert and pointed out that he had not been qualified as an expert at the first trial. Obviously, counsel thought that the District Court would never qualify Graves as an expert and that the defense could thereby block the admission of the disputed "opinion" testimony.

There was certainly a legal basis for defense counsel's request that Graves be qualified as an expert before being allowed to testify on the *modus operandi* of street-level drug dealers. *See, e.g., United States v. Boney,* 977 F.2d 624, 628 (D.C.Cir.1992) ("The operations of narcotics dealers repeatedly have been found to be a suitable topic for expert testimony because they are not within the common knowledge of the average juror."). And given that, in over one hundred court appearances, Graves had previously testified as an expert only four times and had not testified as an expert for over

three years prior to this trial, counsel reasonably believed that Graves would not be qualified as an expert. However, the District Court did qualify Graves as an expert and, having gotten what they asked for, defense counsel could hardly object to their own suggestion.

Defense counsel made a reasonable strategic choice to try to block Graves's "opinion" testimony by asking that he be qualified as an expert and then disputing his qualifications. Unfortunately for Catlett and McAllister, the strategy was unsuccessful. *Strickland* makes clear, however, that appellants cannot prevail on a claim that their counsel were ineffective simply by arguing that a *Beach* objection might have been more successful. This court will not second guess reasonable tactical choices by defense counsel.

More importantly, even if the court were to assume *arguendo* that counsel were deficient for failing to raise a *Beach* objection, appellants have not shown that they were prejudiced by counsel's alleged shortcoming. *Beach* was not the law of this circuit at the time of trial, and it is not the law of the circuit now. *Beach* was not based on the Federal Rules of Evidence, and every federal court to consider the issue of dual testimony as both a fact and expert witness has concluded that the Federal Rules of Evidence permit such testimony. *See United States v. Thomas,* 74 F.3d 676, 683 (6th Cir.) (refusing to adopt a *per se* prohibition on using an officer as both a fact and expert witness), *cert. denied,* — U.S. ——, 116 S.Ct. 1558, 134 L.Ed.2d 659 (1996); *United States v. Foster,* 939 F.2d 445, 450–52 (7th Cir.1991) (allowing dual testimony but urging care to avoid jury confusion); *United States v. Young,* 745 F.2d 733, 760 (2d Cir.1984) (finding it was not improper for the Government to elicit expert testimony from officers who testified as fact witnesses), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). In sum, appellants have not shown a reasonable probability that Graves's "expert" testimony would have been excluded if a *Beach* objection had been made, let alone a reasonable probability that the outcome of

the trial would have been different absent the expert qualification.

## B. *Improper Prosecutorial Argument*

Catlett and McAllister claim that prosecutorial misconduct in closing arguments violated their Fifth Amendment right to due process. Specifically, they object to two comments, one of which allegedly disparaged defense counsel and the other of which allegedly commented on the defendants' failure to testify at trial and shifted the burden of proof to the defense.

 "In order to rise to constitutional proportions, improper prosecutorial argument must cause substantial prejudice to the defendant." *United States v. Monaghan,* 741 F.2d 1434, 1443 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985). In assessing claims of improper prosecutorial argument, the court considers the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper remarks. *Id.*

### 1. Disparagement of Defense Counsel

During the prosecutor's rebuttal closing argument, he made the following comments:

> Ladies and Gentlemen, I listened carefully to everything they said, and largely I could sum it up by simply saying, a couple of years ago on the radio, the actor Karl Malden did a lot of American Express commercials, gave a public service announcement, and warned people, especially during the traveling season, about pickpockets and thieves, and he talked about the modus operandi of these people, and one of the announcements he gave was a little old lady standing in front of you at the bank or a ticket counter at the airport and, suddenly, she'll drop a bunch of change, you're behind her, a good Samaritan, what do you do? You help her pick up the change, you bend down, and while your attention is diverted, you get pickpocketed. The general principle is divert their attention while the thief gets away with the goods.

> And I listened to everything they've said, and I submit to you, this is nothing more than divert their attention while the thieves get away. That's what it is. It's all a smokescreen to say, "Don't look at the important facts."

Trial Transcript (6/29/93) at 85–86.

 Although an attorney "must not be permitted to make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young,* 470 U.S. 1, 9, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985), a prosecutor's statements must be viewed in context. *Id.* at 11, 105 S.Ct. at 1044. Here, the image used by the prosecutor is hardly inflammatory. The prosecutor may have employed a strategy of tough advocacy, but there was no impropriety committed. Criminal prosecution, no less than criminal defense, often requires strong arguments by counsel aimed at capturing the attention of the jury. In this case, the prosecutor was within his rights to suggest to the jury that the arguments raised in defense counsel's summation were merely diversions. Such an argument is not misconduct. In short, we find that these comments were neither improper nor prejudicial.

### 2. Comment on Failure to Call Witnesses

Later during the prosecution's rebuttal closing, the following exchange occurred:

> [PROSECUTOR:] No witness came here from this busy street and says, "Folks, it didn't happen that day."
>
> [DEFENSE COUNSEL:] Objection, your honor.
>
> [THE COURT:] Overruled, this is argument.
>
> [PROSECUTOR:] No one came in here and said they didn't go to the car, nobody came in here and said they didn't go to the alley, no one came here and said he wasn't on the street that day—
>
> [DEFENSE COUNSEL:] Your honor, I object, this is burden-shifting, I object.
>
> [THE COURT:] The arguments of counsel are not evidence in the case. The evidence is the exhibits which have been introduced into evidence and the sworn

testimony of the witnesses. The arguments of any of these counsel are not evidence. All right, go ahead.

Trial Transcript (6/29/93) at 88–89. Catlett and McAllister contend that the prosecutor's argument constituted an indirect comment on their failure to testify and improperly suggested that the defense was required to call witnesses at trial.

 Under *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), it is improper for the prosecutor to comment directly or indirectly on a defendant's failure to testify. Prosecutorial comment violates *Griffin* if "the language used, in context, is such that 'the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *United States v. Harris,* 627 F.2d 474, 476 (D.C.Cir.), *cert. denied,* 449 U.S. 961, 101 S.Ct. 375, 66 L.Ed.2d 229 (1980) (quoting *United States v. Williams,* 521 F.2d 950, 953 (D.C.Cir.1975)). Here, the prosecutor's remarks began, "No witness came here from this busy street and says, 'Folks, it didn't happen that day.'" Trial Transcript (6/29/93) at 88. We understand this to refer only to the absence of testimony by bystanders on the street, not the defendants themselves. We do not think a reasonable juror would have been confused on this point.

 Furthermore, the defendants do not appear to have clearly raised this objection below. At the time the comments were made, defense counsel's only objection was that the comments were "burden-shifting." After the prosecutor's argument concluded, defense counsel moved for a mistrial, again arguing that the comments were "burden-shifting," but citing the case of *"Griffith v. California."* Trial Transcript (6/29/93) at 97. Even if the District Court understood defense counsel to be citing *Griffin,* the only articulated basis for the objection was "burden-shifting." The claim that the prosecutor improperly commented on the defendants' failure to testify was never directly raised, and was thereby forfeited as a basis for appeal absent plain error. *United States v. Olano,* 507 U.S. 725, 731–32, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993). And there certainly is no "plain error" to be found here.

 Although we believe that the prosecutor's remarks were probably nothing more than fair commentary on the evidence presented at trial, we recognize that the argument could have been understood as "burden-shifting" to the extent that it suggested that the defense had some obligation to call witnesses. Even if the prosecutor crossed the line of proper argument, however, he did not thereby deprive the defendants of a fair trial. At the close of the case, the judge very clearly instructed the jury:

> The burden is on the prosecution, the government, to prove the defendants guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require the defendants to prove their innocence or to produce any evidence.

Trial Transcript (6/29/93) at 101. These instructions would have cured any confusion caused by the prosecutor's remarks. *See United States v. Kim,* 595 F.2d 755, 768 (D.C.Cir.1979) (holding that instructions by the court can ameliorate prejudice caused by improper argument).

### C. *Catlett's Motion to Suppress*

 Catlett contends that the police lacked probable cause to arrest him and, therefore, that the District Court should have suppressed the prerecorded twenty-dollar bill and any out-of-court identifications. In reviewing the denial of a motion to suppress, this court determines the existence of probable cause *de novo. United States v. Taylor,* 997 F.2d 1551, 1553 (D.C.Cir.1993). Whether the police have probable cause for an arrest is determined by viewing the totality of the circumstances from the perspective of a prudent police officer and in light of the police officer's training and experience. *Illinois v. Gates,* 462 U.S. 213, 230–32, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983). Probable cause exists where the arresting officer possesses information "sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *see also United States v. Green,* 670 F.2d 1148, 1152 (D.C.Cir.1981). "Conduct which ap-

pears innocent to a lay person may have entirely different significance to an experienced narcotics officer." *United States v. Hicks,* 752 F.2d 379, 384 (9th Cir.1985). Moreover, "a combination of factors may establish probable cause even if each factor standing alone is insufficient." *United States v. Halliman,* 923 F.2d 873, 881 (D.C.Cir. 1991).

▮ Although the issue is a close one, we believe that the following facts, taken together, supplied probable cause: (1) Graves knew Bush was going to set up a drug buy; (2) Graves saw Bush approach Pittiman and Pittiman approach McAllister; (3) Graves saw McAllister motion to Catlett and saw both men go to the car; (4) Graves saw McAllister and Catlett simultaneously reach into different areas of the car; (5) Graves saw McAllister and Catlett walk past his car and look back as if conducting counter-surveillance and Graves made eye contact with Catlett; (6) Graves saw McAllister and Catlett meet Bush and Pittiman in the alley and saw an exchange; (7) Graves knew from Bush that a drug transaction was completed. Moreover, at the time of the arrests, the police had no way of knowing whether the drugs sold to Officer Bush were retrieved from the trunk or body of the car. These facts were sufficient to provide probable cause to believe that Catlett had aided and abetted an illegal drug transaction. Accordingly, Catlett's arrest was proper, and the District Court correctly denied his motion to suppress.

### D. *Catlett's Sufficiency of the Evidence Claim*

▮ Catlett contends that the evidence was insufficient to convict him of distribution and possession with intent to distribute cocaine base. In reviewing the sufficiency of the evidence, this court must affirm the conviction if, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Washington,* 12 F.3d 1128, 1135–36 (D.C.Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994) (quoting *Jackson v. Virginia,* 443 U.S. 307,

319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). The Government must be granted "the benefit of all reasonable inferences that may be drawn from the evidence, and ... the jury [permitted] to determine the weight and credibility of the evidence." *United States v. Sutton,* 801 F.2d 1346, 1358 (D.C.Cir.1986).

▮ In addition to the facts that supplied probable cause, evidence that, at the time of his arrest, Catlett was in possession of the prerecorded MPD funds used in the drug transaction supported Catlett's convictions for distribution and possession with intent to distribute cocaine base. The evidence was sufficient to allow a rational jury to find beyond a reasonable doubt that Catlett was guilty of the crimes charged. *See, e.g., United States v. Munoz–Fabela,* 896 F.2d 908, 911 (5th Cir.) (holding that a reasonable jury could conclude defendant aided and abetted drug transaction by providing surveillance and security for principal participants), *cert. denied* 498 U.S. 824, 111 S.Ct. 76, 112 L.Ed.2d 49 (1990).

### E. *The § 924(c) Convictions*

The Government concedes that Catlett's and McAllister's convictions for using a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c) must be reversed in light of *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (holding that the Government must show "active employment" of a gun to prove "use" within the meaning of § 924(c)). The parties also agree that the court should remand for re-sentencing on all counts so that the Government can seek an enhancement of the offense levels on the drug offenses based on the presence of guns in the trunk. *See United States v. Fennell,* 77 F.3d 510 (D.C.Cir. 1996) (vacating conviction under § 924(c) in light of *Bailey* and remanding for re-sentencing to allow Government to seek enhancement under U.S.S.G. § 2D1.1). Accordingly, we vacate the convictions under § 924(c) and remand for resentencing.

### III. CONCLUSION

For the foregoing reasons, we hereby affirm Catlett's and McAllister's convictions for

distribution and possession with intent to distribute cocaine base. The convictions under 18 U.S.C. § 924(c) are reversed, and the case is hereby remanded for resentencing on all counts.