# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 17, 2007      Decided November 27, 2007

No. 06-3067

UNITED STATES OF AMERICA,
APPELLEE

v.

XAVIER VALENTINE BROWN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 05cr00002-06)

*Reita Pendry*, appointed by the court, argued the cause and filed the briefs for appellant.

*Leslie A. Gerardo*, Assistant U.S. Attorney, argued the cause for appellee.  On the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III*, *Mary McCord*, and *Elizabeth Gabriel*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  Xavier V. Brown was convicted of one count of conspiracy to possess with intent to

distribute and to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. In this appeal, Brown claims that the prosecutor committed reversible errors by commenting on the fact that appellant did not testify in his own defense, using the guilty pleas of co-conspirators as substantive evidence in the prosecution of appellant, and vouching for the credibility of Government witnesses. Appellant also contends that the District Court erred in failing to give an explicit instruction to the jury that the co-conspirators' guilty pleas could not be considered proof of Brown's guilt. According to appellant, the cumulative effect of these errors was so egregious that his conviction should be overturned.

Defense counsel did not object at trial to any of the prosecutorial actions that appellant now contends warrant the reversal of his conviction, nor did defense counsel request the jury instruction that appellant now claims should have been given by the trial judge. Because these claims were never raised before the District Court, the plain error standard of review controls the disposition of this appeal. FED. R. CRIM. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731 (1993).

With respect to appellant's allegations that the prosecutor improperly commented on his failure to testify and improperly cited the guilty pleas of co-defendants, it is far from clear that the prosecutor's statements were error, much less plain error. Even if some of the prosecutor's statements were erroneous, they certainly were not prejudicial to the outcome of the trial, and accordingly do not constitute a reversible error. We agree, however, that the prosecutor clearly erred in expressing his personal beliefs regarding appellant's guilt. Nonetheless, because appellant has failed to demonstrate that the error affected his substantial rights or that it seriously affected the fairness, integrity, or public reputation of the judicial proceeding, we are constrained to hold that there is no plain error. We therefore affirm appellant's conviction.

## I. BACKGROUND

This case involves a drug conspiracy run by a Panamanian national named Jose Meneses (a.k.a. "Cholo" or "Cholito") who allegedly smuggled heroin from Panama to the United States in 2004 with the help of associates named Gregory Fulton (a.k.a. "Melsum Shasha"), Ana Alvarez Rios, Alexis Barraza, and Olivia Williams. Appellant Xavier Brown was arrested and charged with being a party to a drug conspiracy after he met with Fulton to pick up money that Fulton owed Meneses for earlier shipments of heroin. Fulton, Rios, Barraza, and Williams testified against Brown pursuant to plea agreements. Brown did not testify. At trial, defense counsel did not challenge the existence of a "drug distribution network," Trial Tr. (1/5/06) at 423, but argued instead that appellant lacked the requisite knowledge and intent for the conspiracy charge.

The sting operation that led to Brown's arrest began on December 1, 2004, when Gregory Fulton was arrested on narcotics charges. Fulton testified that, following his arrest, he informed the Federal Bureau of Investigation ("FBI") of his involvement in a heroin distribution ring run by Jose Meneses, and indicated that he could obtain heroin from Meneses via distributors, including Alexis Barraza. Fulton agreed to cooperate with the FBI by purchasing heroin from Meneses and his associates in an undercover capacity. Fulton subsequently called Meneses and Barraza to arrange for shipments of heroin. Fulton's testimony was largely corroborated at trial by FBI Special Agent Tim Ervin.

Ana Alvarez Rios testified that she had known Brown since 2003 and had introduced him to Meneses while in Panama on November 3, 2004. She also testified that, at Meneses' request, she carried two kilograms of heroin from Panama to New York on December 4, 2004, and had instructions to give Fulton and Brown one kilogram apiece. After arriving at Olivia Williams' apartment, Rios spoke with Brown to arrange a time for him to

pick up his kilogram of heroin. According to Rios, appellant came to Williams' apartment and Rios handed him the heroin herself.

On January 4, 2005, Fulton told Meneses that he had a large sum of money to pay Meneses for the heroin and that someone needed to pick it up from Washington, D.C. Meneses replied that he had an "associate" from Baltimore who might be able to pick up the money. Later that day, Fulton received a phone call from a man who identified himself as "Gordo" and said he would pick up the money for Meneses. Subsequent phone calls between Fulton, Meneses, and "Gordo" were made to coordinate the pickup. Recordings and transcripts of these phone calls were entered into evidence at trial. Trial Tr. (1/4/06) at 319-23.

On January 6, 2005, "Gordo" and Fulton arranged to meet at a McDonald's parking lot in northeast Washington, D.C. The FBI had intended to use this meeting as an opportunity to "lure a member of the conspiracy into Washington" and arrest him. Trial Tr. (1/3/06) at 164. At the McDonald's, appellant identified himself as "Gordo" and got into Fulton's car. While Brown was in the car, Fulton spoke with Meneses on a cell phone and asked Meneses if the gentleman in the car – whom Fulton knew as "Gordo" – was "his [Meneses'] man." Meneses responded in the affirmative, and Fulton passed Brown the cell phone so that appellant could also confirm speaking with Meneses. When appellant exited the vehicle, he was immediately arrested.

At the time Brown was arrested, he had a cell phone in his hand. The last number dialed on the phone was a number in Panama, which was labeled "Cholito's new cell" in the phone's internal address book. Four other cell phones were found in the car Brown was driving. Two notebooks were also recovered from Brown's vehicle. In one of the notebooks, there was a notation that read "Cholo" and, below that, Fulton's phone number was listed. The other notebook contained Barraza's

phone number with "Alexis" written underneath it, several references to "Cholo," the words "95 South" (directions from New York to Washington, D.C. that Fulton had previously provided "Gordo" by telephone), the date "1/6/05," and another notation of Fulton's phone number. The notebooks and the phones were entered into evidence at trial. Trial Tr. (1/3/06) at 166-68, 171-72.

Barraza was also arrested on January 6, 2005, though Barraza was apprehended in Miami. Barraza testified that on "two or three" occasions in 2004 he had received phone calls from appellant, instructing Barraza to call Meneses, and Barraza likewise had called appellant to relay similar messages from Meneses. However, Barraza had never seen Brown until they met in the Washington, D.C. jail one month after their arrests. Barraza testified that Brown had revealed to him that Brown was the one with whom Barraza had previously spoken by phone, and that Brown had told Barraza that Meneses was "his friend also." Trial Tr. (1/4/06) at 225.

Besides Special Agent Ervin, Barraza, Rios, Williams, and Fulton, the only other Government witness was Kendrick Eastmond. Eastmond testified that before his 2002 arrest, he and Brown had participated in 90-100 drug transactions. According to Eastmond, he and Brown would travel between Richmond, Virginia and Brooklyn, New York two to three times a month to transport crack cocaine. Eastmond and Brown also traveled to Panama together to establish contacts and seek better prices for cocaine. Eastmond's testimony was offered solely for the purpose of proving Brown's knowledge and intent to participate in a drug-related conspiracy before his arrest; the Government did not argue that Eastmond had any connection to the Meneses conspiracy.

The only witness the defense called was FBI Special Agent Tucker Vanderbrunt. He testified that Brown had been outside of the United States from November 18, 2004 until December

18, 2004. Defense counsel's closing argument challenged the credibility of the Government's witnesses while primarily asserting that the Government could not prove that Brown had the requisite level of knowledge or intent. As defense counsel stated:

> [W]e don't really conflict in much of what happened in this case. If you think I'm going to step up here and tell you that Xavier Brown did not come down to Washington, D.C. to get money, that's not going to happen. Because he did. He did come down to Washington, D.C. to pick up some money.
>
> The question is, when he came down here, did he know what he was doing? Did he come down with the knowledge that he was picking up money for a drug conspiracy, and did he come down with the intent to participate in this conspiracy?

Trial Tr. (1/5/06) at 423.

During his opening statement and closing argument before the District Court, the prosecutor stated that the Government's case was "unquestioned," arguably noting for the jury that appellant was not testifying in his own behalf. Defense counsel did not object to these statements. The prosecutor also made some comments that could have been construed by the jury to mean that the guilty pleas of appellant's co-conspirators gave evidence of appellant's guilt. The defense counsel did not object to these comments, nor did he ask the trial judge to warn the jurors that appellant could not be found guilty by mere association with his co-conspirators. Finally, on several occasions, the prosecutor made statements suggesting that he could verify the truthfulness of a witness' testimony and offered his personal judgment of the credibility of witnesses. Defense counsel never objected to these statements at trial.

The jury returned its guilty verdict on January 6, 2006. Appellant then filed a timely appeal.

## II. ANALYSIS

### A. *Standard of Review*

Defense counsel did not object to any of the allegedly improper statements during trial, nor did counsel request a specific instruction regarding the co-conspirators' guilty pleas. We review unpreserved claims only for plain error, in accordance with Federal Rule of Criminal Procedure 52(b). The plain error standard requires appellant to demonstrate "(1) a legal error that was (2) 'plain' (a term that is synonymous with 'clear' or 'obvious'), and that (3) affected [his] substantial rights." *United States v. Sullivan*, 451 F.3d 884, 892 (D.C. Cir. 2006) (citing *Olano*, 507 U.S. at 732-34). "If all three conditions are met, we retain discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 892-93 (citing *Olano*, 507 U.S. at 735-36). Appellant has the burden of proving each element of the plain error standard. *Olano*, 507 U.S. at 734.

In explaining the third element of the plain error standard of review, the Supreme Court has indicated that "in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id*. In assessing whether a *clear* error is also prejudicial, we "typically look[] to the centrality of the issue affected, the severity of the prosecutor's misconduct, the steps taken to mitigate the misconduct, and the closeness of the case." *United States v. Venable*, 269 F.3d 1086, 1091 (D.C. Cir. 2001); *see also United States v. Gartmon*, 146 F.3d 1015, 1026 (D.C. Cir. 1998). Many of Brown's claims do not present clear errors, if they present errors at all. In any event, we are confident that no error

claimed here affected Brown's substantial rights under the third element of the plain error standard.

## B. *Comments Related to Appellant's Decision Not to Testify*

Brown argues that several statements by the prosecutor improperly called attention to the fact that he chose not to testify in his own defense. For example, the prosecutor repeatedly referred to portions of the Government's case as "unquestioned." *See, e.g.*, Trial Tr. (1/3/06) at 105, 106, 107, 109, 110; Trial Tr. (1/5/06) at 433. These comments, according to Brown, served to shift the burden of proof, because jurors were led to believe that Brown was required to testify in order to avoid conviction.

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Supreme Court has held that the Fifth Amendment therefore prohibits "comment by the prosecution on the accused's silence." *Griffin v. California*, 380 U.S. 609, 615 (1965). The Court's rationale for this principle is simple: "[C]omment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice' which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." *Id.* at 614 (citation and footnote omitted). In applying *Griffin*, we have held that "[p]rosecutorial comment violates [the Fifth Amendment] if the language used, in context, is such that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996) (internal quotation marks omitted).

The statements in the prosecutor's opening statement to which Brown now objects do not meet the *Catlett* threshold for improper commentary. First, the references to "unquestioned" evidence in the prosecutor's opening statement occurred *before*

the jury learned that Brown would not testify. Indeed, Brown's decision not to testify was only disclosed to the prosecution and to the District Court at the close of the prosecution's case. Trial Tr. (1/5/06) at 398. It strains credulity to believe that jurors would have "naturally and necessarily" connected any of the prosecutor's earlier references to "unquestioned" evidence with Brown's decision not to testify two days later.

Furthermore, all but one of the statements from the prosecutor's closing argument that Brown finds objectionable do not directly implicate Brown's decision not to testify. "Neither courts nor juries parse extemporaneous remarks in closing argument as closely as sentences in carefully drafted legal documents." *Venable*, 269 F.3d at 1090. Thus, "[i]n assessing the import of a statement made in closing argument, context is key." *Id.* The only statement of dubious propriety was the prosecutor's assertion in rebuttal that "[the defendant's] intent is unquestioned in this case." Trial Tr. (1/5/06) at 433. To be sure, a prosecutor must have the ability to respond to a defendant's claim during closing argument that the Government has not established his intent. *See United States v. Monaghan*, 741 F.2d 1434, 1439 (D.C. Cir. 1984). Nevertheless, the prosecutor's statement here was error because the non-testifying defendant was the only person in a position to refute the statement. As appellant contends, jurors "might logically have construed the prosecutor's statement as an allusion to [the defendant's] silence." *Monaghan*, 741 F.2d at 1438. It is doubtful, however, that this erroneous statement rose to the level of a *clear* error, and it is clear that the statement did not prejudice the outcome of the case.

The trial judge mitigated the impact of the prosecutor's remark by instructing the jury that "[t]he burden is on the Government to prove the defendant guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence or

to produce any evidence." Trial Tr. (1/5/06) at 439. The District Court judge went on to state that "Xavier Brown has chosen to exercise his right to remain silent. You must not hold this decision against him . . . . Most importantly, you must not draw any inference of guilt from the defendant's decision not to testify." *Id.* at 440. Given that the prosecutor's statement was a veiled reference at best – if a reference at all – to the defendant's silence, "[t]hese [jury] instructions would have cured any confusion caused by the prosecutor's remarks." *Catlett*, 97 F.3d at 573. On this record, including the fact that the weight of the evidence against appellant was significant, we find no plain error.

**C. *Inferences from the Guilty Pleas of Co-Conspirators***

Brown argues that the prosecutor made improper comments that invited the jury to consider the guilty pleas of other members of the conspiracy as substantive evidence of Brown's guilt. In the prosecutor's closing argument, he stated,

> There's no evidence that Olivia Williams, Ana Rios, Mr. Fulton, Mr. Eastmond, no evidence that anyone had an ax to grind with this defendant. . . .
>
> So when you evaluate their testimony, surely you can ask, well, did they do what the Government said they did? The answer is yes. In that train, that conspiratorial train, they have admitted their portion. And every defendant has a right to have a trial by jury, and for a jury to find them guilty on their portion beyond a reasonable doubt. In this case I ask you, based solely on the evidence, to find this defendant guilty for his portion. And his portion is the conspiracy of possession with intent to distribute, and possession and distribution of a kilogram or more of heroin. That's this defendant's part.

Trial Tr. (1/5/06) at 422. Brown contends that this statement impermissibly urged his guilt by reference to his mere

association with his co-conspirators. Brown also alleges that, upon hearing the prosecutor's allegedly improper argument, the District Court should have promptly instructed the jury *sua sponte* that the co-conspirators' guilty pleas did not imply Brown's guilt by mere association, and the trial judge's failure to do this was error.

Appellant's claims fail. First, it is doubtful whether the prosecutor's statements rise to the level of clear error. In *United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988), this court stated that "[a] government witness' guilty plea obviously may not be used as substantive evidence of the guilt of defendants, but the plea is equally obviously admissible to show the witness' acknowledgment of his role in the offense and to reflect on his credibility." *Id.* at 1404-05. Although this is a fine line for prosecutors to walk, in this case the prosecutor properly referenced the plea agreements in the context of a larger discussion about the evidence of a conspiracy generally and the credibility of Government witnesses. After all, Brown's defense was in large part that the Government had failed to establish his knowledge and intent because the Government's witnesses had entered into plea agreements that cast doubt on their credibility. *See, e.g.*, Trial Tr. (1/3/06) at 115.

In any event, Brown has failed to demonstrate that the prosecutor's statements were prejudicial, most particularly because the trial court judge provided instructions regarding the testimony of witnesses who had signed plea agreements. The jurors were instructed that they could "consider whether a witness who has entered into [a plea] agreement has an interest different from any other witness. A witness who realizes that he or she may be able to obtain his or her own freedom, or to receive a lighter sentence by giving testimony, may have a motive to lie." Trial Tr. (1/5/06) at 443. The District Court judge also instructed the jurors: "In deciding whether an agreement existed, you may consider the acts and statements of

all the alleged participants. In deciding whether the defendant became a member of that conspiracy, you may consider only the acts and statements of that particular defendant." *Id.* at 446. Because these instructions nullified any suggestion that appellant could be found guilty on the basis of his mere association with the co-conspirators, they effectively mitigated the impact of the disputed statements made by the prosecutor.

Finally, contrary to appellant's allegation, the fact that the trial court did not provide a jury instruction *sua sponte*, during the prosecutor's closing argument, did not constitute error. The District Court judge provided instructions to the jury at the close of trial that sufficiently addressed the Government's burden of proof and the limited significance of the plea agreements. There was no plain error.

**D.** *Comments Vouching for the Credibility of Government Witnesses*

Brown also contends that the prosecutor improperly vouched for the truthfulness of Government witnesses. He advances this claim on two grounds. First, appellant argues that the prosecutor improperly referred to the plea agreements that witnesses had signed by implying that Government counsel could independently verify the truthfulness of the witnesses who had signed these agreements. Second, appellant alleges that the prosecutor repeatedly injected his personal assessment of the credibility of various witnesses and of Brown's guilt into his presentation of the case.

Brown's first argument is unavailing. This court has held that plea agreements can be introduced by the prosecution and referred to in their entirety, because so doing does not improperly bolster the witness who signed the plea agreement. *United States v. Spriggs*, 996 F.2d 320, 324 (D.C. Cir. 1993). One of our sister circuits has suggested that the "[u]se of the 'truthfulness' portions of [plea] agreements becomes

impermissible vouching . . . when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony." *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990). Under this standard, two comments by the prosecutor in this case are arguably objectionable – (1) when the prosecutor asked Olivia Williams "if it is determined that you have not told the truth, ma'am, will this plea agreement be in effect if you lie?" Trial Tr. (1/4/06) at 286, and (2) when the prosecutor asked Gregory Fulton "if it's determined that you have not told the truth at any time, sir, will this plea agreement be voided?" *id.* at 340. In suggesting that the witnesses' plea agreements would be automatically voided if they lied, the prosecutor arguably implied that he was capable of monitoring the witnesses' truthfulness.

Even assuming, *arguendo*, that these statements constitute clear error, appellant has not demonstrated that the statements affected his substantial rights. Olivia Williams was an ancillary witness in the prosecution's case against Brown, and Gregory Fulton's testimony was mostly anticipated by the testimony of FBI Special Agent Ervin. The jury did not have to assign any weight to the testimony of either witness in order to find Brown guilty, and thus the prosecution's misstatements did not relate to a central issue in the case. Furthermore, the trial court instructed the jurors:

> You are the sole judges of the facts. You alone will decide what weight to give to the evidence presented during the trial, you decide the value of the evidence, and you decide the believability of the witnesses.

Trial Tr. (1/5/06) at 436. This mitigated any harm that might have come from the prosecutor's comment.

Brown's second vouching allegation raises a more troublesome issue. On the record here, there is little doubt that

the prosecutor committed serious errors when he injected his personal assessments of the credibility of witnesses into his presentation of the case. During his closing argument, the prosecutor repeatedly stated that he "believed" various Government witnesses. With respect to Ana Alvarez Rios, the prosecutor stated:

> I believe the evidence and the testimony of Mrs. Ana Alvarez Rios, I believe her testimony regarding this defendant and his actions proves him guilty beyond a reasonable doubt. And her testimony had a ring of truth or a ring of trustworthiness that you could take to the bank.

Trial Tr. (1/5/06) at 414. These comments constituted impermissible vouching.

At oral argument before this court, Government counsel conceded that the prosecutor's argument "could have been phrased more artfully." In truth, as a member of the court pointed out, the prosecutor's argument "could hardly have been phrased more poorly!" Recording of Oral Argument, 13:35-13:40.

The rule against vouching is well established. As this court made clear in *Harris v. United States*, 402 F.2d 656 (D.C. Cir. 1968), "it [is] for the jury, and not the prosecutor, to say which witnesses [are] telling the truth. Neither counsel should assert to the jury what in essence is his opinion on guilt or innocence." *Id.* at 658. *See also* MODEL RULES OF PROF'L CONDUCT R. 3.4(e) (2002) (prohibiting a lawyer from "stat[ing] a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.").

The rule against vouching is also very important, because it seeks to protect the integrity of the trial process and ensure that judgments and verdicts are grounded in evidentiary facts:

[T]he purpose of the rule forbidding expression of opinion of counsel on the ultimate issue is to keep the focus on the *evidence* and to eliminate the need for opposing counsel to meet "opinions" by urging his own contrary opinion. The impropriety of substituting an attorney's view of the case for the evaluation of the evidentiary facts has been discussed by Drinker . . . :

> "There are several reasons for the rule, long established, that a lawyer may not properly state his personal belief either to the court or to the jury in the soundness of his case. In the first place, his personal belief has no real bearing on the issue; no witness would be permitted so to testify, even under oath, and subject to cross-examination, much less the lawyer without either. Also, if expression of personal belief were permitted, it would give an improper advantage to the older and better known lawyer, whose opinion would carry more weight, and also with the jury at least, an undue advantage to an unscrupulous one. Furthermore, if such were permitted, for counsel to omit to make such a positive assertion might be taken as an admission that he did not believe in his case." H. DRINKER, LEGAL ETHICS 147 (1953) (footnotes omitted).

*Harris*, 402 F.2d at 658. Impermissible vouching is particularly dangerous when it is done by prosecutors:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and *the prosecutor's opinion carries with it the*

> *imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.*

*United States v. Young*, 470 U.S. 1, 18-19 (1985) (emphasis added). Juries are aware that prosecutors have "as much [a] duty to refrain from improper methods calculated to produce a wrongful conviction as [they have] to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935), *overruled on other grounds by Stirone v. United States*, 361 U.S. 212 (1960). Therefore, "improper suggestions, insinuations and, especially, assertions of personal knowledge [by prosecutors] are apt to carry much weight against the accused when they should properly carry none." *Id.* A prosecutor is barred neither from giving a strong closing argument, nor from responding to a defendant who questions the credibility of the Government's witnesses "in his own closing argument and throughout the trial," *United States v. Robinson*, 59 F.3d 1318, 1323 (D.C. Cir. 1995), but counsel must "stick[] to the evidence and refrain[] from giving his personal opinion." *United States v. Dean*, 55 F.3d 640, 665 (D.C. Cir. 1995).

It is clear in this case that the prosecutor erred in expressing his personal beliefs regarding appellant's guilt. If defense counsel had raised a timely objection, the trial judge would have been afforded an opportunity to admonish the prosecutor and instruct the jury to disregard his expressions of personal belief. And if the trial judge had failed to address the situation so as to render any error harmless, then the prosecutor's misdeeds would have resulted in reversible error. As it stands, however, defense counsel did not object, so the prosecutor's error must be assessed pursuant to the plain error standard of review. Under that standard, we hold that there was an "error" that was "plain," but we cannot find that the error affected appellant's substantial rights or that it seriously affected the fairness, integrity, or public reputation of the judicial proceeding. There are two

reasons for this: First, the weight of the evidence against Brown was quite strong. And, second, although the trial judge did not precisely address the prosecutor's errors, he did give instructions to the jury making it clear that the prosecutor's personal beliefs were irrelevant. *See, e.g.*, Trial Tr. (1/5/06) at 436 ("You [jurors] are the sole judges of the facts. You alone will decide what weight to give to the evidence presented during the trial, you decide the value of the evidence, and you decide the believability of the witnesses."); *id.* at 438 ("The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence."); *id.* at 441 ("You are the sole judge of the credibility of the witnesses; in other words, you alone are to determine whether to believe any witness, and the extent to which any witness should be believed."). The plain error standard imposes a high threshold on claims of reversible error, and we cannot say the prosecutor's misstatements in this case cross it.

**E.** *Cumulative Effect of Alleged Improprieties*

We have previously stated that "although certain errors standing alone might be insufficient to overturn a verdict, these errors may exert a cumulative effect such as to warrant reversal. The critical inquiry is an analysis of the 'probable impact, appraised realistically, of the particular [errors] upon the jury's factfinding function.'" *United States v. Jones*, 482 F.2d 747, 749 n.2 (D.C. Cir. 1973) (quoting *United States v. Wharton*, 433 F.2d 451, 457 (D.C. Cir. 1970)) (alteration in original). As noted above, many of the prosecutor's statements to which appellant now objects did not constitute clear error, and the few statements that did result in clear error were not prejudicial. The individual effect of each improper comment on the jury's factfinding function was negligible, primarily because the Government's case was strong and because the District Court's instructions to the jury mitigated any harm caused by prosecutorial missteps. Accordingly, we hold that the

cumulative effect of the prosecutor's errors does not warrant reversal pursuant to the plain error standard of review.

### III. CONCLUSION

For the reasons given above, the judgment of the District Court is affirmed.

*So ordered.*