RECOMMENDED FOR PARTIAL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0290P (6th Cir.)
File Name: 00a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

TRAVIS COLLINS (98-3475);
WILLIAM J. WARD (98-3479),
  *Defendants-Appellants.*

Nos. 98-3475/3479

> Appeal from the United States District Court
> for the Southern District of Ohio at Cincinnati.
> No. 97-00019—Sandra S. Beckwith, District Judge.
>
> Argued: January 27, 2000
>
> Decided and Filed: August 31, 2000
>
> Before: JONES, NORRIS, and SILER, Circuit Judges.

---

### COUNSEL

**ARGUED:** William J. Rapp, Cincinnati, Ohio, W. Kelly Johnson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, SOUTHERN DISTRICT OF OHIO, Cincinnati, Ohio, for Appellants. Christopher K. Barnes, UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** William J. Rapp, Cincinnati, Ohio, W. Kelly

Johnson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, SOUTHERN DISTRICT OF OHIO, Cincinnati, Ohio, for Appellants. Christopher K. Barnes, Terry Lehmann, Timothy D. Oakley, UNITED STATES ATTORNEYS, Cincinnati, Ohio, for Appellee.

NORRIS, J., delivered the opinion of the court, in which SILER, J., joined. JONES, J. (pp. 14-17), delivered a separate concurring opinion.

————————————

**OPINION**

————————————

ALAN E. NORRIS, Circuit Judge. Defendants Travis Collins and William Ward were charged with conspiracy to commit bank robbery, bank robbery, and use of a firearm during a crime of violence in violation of 18 U.S.C. § 2, § 371, § 924(c), and § 2113(a), (d). Ward was also charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and § 924(a)(2). Defendants were convicted following a jury trial. They argue that the court erred in allowing jurors to ask questions and denying their motions for a new trial based on newly discovered evidence. Ward also asserts that the court erred in permitting prejudicial testimony by a government witness, allowing the government to ask Ward's alibi witness about certain actions, and refusing to give a defense theory jury instruction. Finally, defendants maintain that the court improperly calculated their sentences.

Because resolution of defendants' issues concerning jurors' questioning of witnesses and Collins' challenge to his sentence under the second application note to U.S. Sentencing Guidelines Manual § 2K2.4 may have precedential value, those issues will be addressed below. The remaining issues raised by defendants are addressed in an unpublished appendix to this opinion.

## I.

On November 15, 1996, Ward went into a bank, pointed a sawed-off shotgun at teller Melody Demarest, and demanded money. Before Demarest could respond, the shotgun went off, causing her extensive injuries. Ward fled the bank without any money and escaped in a car driven by Collins. Testimony at trial indicated that the shotgun used in the bank robbery had been obtained through the burglary of Paul Disque's home.

At trial, the judge allowed jurors to propose questions to be asked of witnesses. The record does not reveal whether counsel knew prior to the trial that the judge intended to allow juror questioning. The court informed the jury that:

> This Court does not have a rule against the asking of questions by jurors. The Court does, however, impose some guidelines that govern the asking of questions. Please withhold any questions until after a witness has completed his or her testimony. Do not interrupt the examination of a witness in order to ask a question. When a witness has finished his or her testimony, then if there is some substantial question in your mind, you may address an inquiry to the witness by writing the question on a piece of paper, and passing it to the courtroom deputy. If your question is an appropriate one, I will ask it of the witness, and I will then permit counsel for the parties to ask any appropriate follow-up questions.

During the trial, the court appears to have asked the jurors if they had questions for each witness about to leave the stand. An example of what the court asked is: "Ladies and gentlemen of the jury, is there anyone who has a substantial question in his or her mind that you would like put to [the witness] before he leaves the witness stand?" On some occasions, the court indicated that it would not ask a question because it was inappropriate, often explaining that a question was not appropriate for "technical/legal reasons." The preliminary and final jury instructions also informed the jurors that when the judge sustained an objection to a

question, the jurors had to ignore the question and not guess at the answer.

Collins was sentenced in April 1998. In calculating his sentence, the court grouped together the bank robbery and conspiracy counts and began with a base offense level of 20 under the robbery guideline. *See* U.S. SENTENCING GUIDELINES MANUAL § 2B3.1(a) (1997). The court adjusted the base offense level, increasing it by two levels because the offense involved the property of a bank and six levels because Demarest sustained permanent and life-threatening injuries. *See id.* at § 2B3.1(b)(1), (b)(3)(C). At that point, Collins' adjusted base offense level was 28.

Next, the court looked to guideline § 2K2.4, which addresses the penalty for a defendant convicted under 18 U.S.C. § 924(c). Application note 2 to that guideline states:

> Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (*e.g.*, § 2B3.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense.

> In a few cases, the offense level for the underlying offense determined under the preceding paragraph may result in a guideline range that, when combined with the mandatory consecutive sentence under 18 U.S.C. § 844(h), § 924(c), or § 929(a), produces a total maximum penalty that is less than the maximum of the guideline range that would have resulted had there not been a count of conviction under 18 U.S.C. § 844(h), § 924(c), or § 929(a) (*i.e.*, the guideline range that would have resulted if the enhancements for possession, use, or discharge of a firearm had been applied). In such a case, an upward departure may be warranted so that the conviction under 18 U.S.C. § 844(h), § 924(c), or § 929(a) does not result in a decrease in the total punishment. An upward departure under this paragraph shall not exceed the maximum of the guideline range that

demonstrated a violation of their due process right to a fair trial.

Outside of the above areas of disagreement, I concur in all aspects of the majority opinion.

specifically asked the jury whether it had any questions for the respective witness. On those unusual occasions when juror questioning is appropriate, district courts should refrain from inviting or encouraging jurors to ask questions. Such solicitation of juror questions is apt to promote questioning beyond legally appropriate bounds and to thereby compromise the defendant's right to due process. *See United States v. Douglas*, 81 F.3d at 324, 326 (2d Cir. 1996) ("[Inviting juror questions] risks an undue extent of questioning and might even cause some jurors to feel that they are not fulfilling their responsibilities unless they ask questions."); *Ajmal*, 67 F.3d at 14-15 (rejecting the practice of establishing at the outset of trial that juror questions would be allowed and the practice of inviting jurors to ask questions at the end of each witness's testimony). Further, while the court did instruct the jury that it should ignore questions asked by lawyers for which objections were sustained, *see* J.A. at 807, it did not specifically emphasize that implications should not be drawn from unasked juror questions. In these various ways, the district court failed to use sufficiently rigorous prophylactic measures to protect the due process interests of the defendants. However, I underscore that the allowance of juror questioning, in the first instance, was not legally appropriate in this case.

Despite the district court's improvident allowance of juror questioning, the defendants' inability to demonstrate prejudice requires that we affirm their convictions. A variety of witnesses, including Wurster, Reidmiller, Hembree, and Schweinzger, attested to Ward's and Collins' involvement in the robbery. Reidmiller and Schweinzger testified that Ward confessed that he had robbed the Cardinal State bank, and other witnesses attested to Ward's and Collins' activities in preparation for the robbery. In short, notwithstanding the district court's erroneous permission of juror questioning, the defendants have not demonstrated that this error changed the outcome of their trial. *See Rogers*, 118 F.3d at 475; *Presser*, 844 F.2d at 1281. It is on this basis that I concur in the majority's judgment that the defendants have not

would have resulted had there not been a count of conviction under 18 U.S.C. § 844(h), § 924(c), or § 929(a).

The court determined that if Collins had not been convicted under 18 U.S.C. § 924(c), his base offense level under guideline § 2B3.1 would have been 33. An offense level of 33 and a criminal history category of III would have resulted in a sentencing range of 168 to 210 months. The court then looked at Collins' sentencing range with the 18 U.S.C. § 924(c) conviction which, with an offense level of 28 and a criminal history category of III, resulted in a sentencing range of 97 to 121 months. Adding the mandatory 60 months' consecutive sentence of 18 U.S.C. § 924(c), the resulting sentencing range was 157 to 181 months. After comparing the ranges with and without the 18 U.S.C. § 924(c) conviction, the court determined that an upward departure of two levels was warranted in order to bring Collins' sentence up to the level contemplated by the guidelines in the absence of a conviction under 18 U.S.C. § 924(c).

Finally, the court departed upward two levels under guideline § 5K2.0, based upon the burglary of Disque's home. Therefore, Collins' total offense level was 32. He was sentenced to 60 months for the conspiracy count; 168 months for the bank robbery count, to run concurrently with the conspiracy sentence; and 60 months for the 18 U.S.C. § 924(c) count, to run consecutively to the bank robbery count.

## II.

### A.    Questions by Jurors

Defendants allege error in the district court's decision to allow jurors to question witnesses during the trial. While this court has not previously addressed this issue, we agree with other United States Courts of Appeals that, while allowing jurors to ask questions during criminal trials is permissible and best left to the discretion of the trial judge, the routine

practice of juror questioning should be discouraged. Nonetheless, we discern no abuse of discretion in this case.

There are a number of dangers inherent in allowing juror questions: jurors can find themselves removed from their appropriate role as neutral fact-finders; jurors may prematurely evaluate the evidence and adopt a particular position as to the weight of that evidence before considering all the facts; the pace of trial may be delayed; there is a certain awkwardness for lawyers wishing to object to juror-inspired questions; and there is a risk of undermining litigation strategies. *See United States v. Ajmal*, 67 F.3d 12, 14 (2d Cir. 1995) (citing cases). In light of jurors' lack of knowledge of the rules of evidence, a juror question may be improper or prejudicial. *See DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 516 (4th Cir. 1985) (discussing a case in which juror questions were posed within the hearing of other jurors). When a court declines to ask a question, the questioning juror may feel that her pursuit of truth has been thwarted by rules she does not understand. *See id.* Concern has also been expressed over a risk that a sense of camaraderie among jurors may lead them to attach more significance to questions propounded by fellow jurors than those posed by counsel. *See id.* at 516-17.

On the other hand, there are benefits to allowing questions by jurors: not only may such questions result in more attentive jurors, but juror questions may advance the search for truth by alleviating uncertainties in the jurors' minds, clearing up confusion, or alerting attorneys to points that bear further elaboration. *See United States v. Sutton*, 970 F.2d 1001, 1005 n.3 (1st Cir. 1992).

Defendants maintain that the court abused its discretion by allowing juror questions because the facts of this case were not sufficiently complex to warrant jury questioning and, even if such questioning was appropriate, the court did not properly implement prophylactic measures. We will address each argument in turn.

the parties, the district court announced on the opening day of trial that juror questioning would be allowed. Neither in this initial announcement, nor at any other point in the trial, did the district court specifically state the reasons that justified juror questioning. The facts involved here are anything but complex. The government's case consisted entirely of witness testimony and simple forensics evidence, and the defendants' alibis were simply that they were somewhere else at the time of the crime. Perhaps implicitly conceding the point, the government does not even allege a compelling reason for juror questioning; rather, it argues that the district court employed sufficient safeguards to protect the defendants from prejudice and that the actual questions asked were innocuous.[1] *See* U.S. Br. at 15. However, this approach obscures the necessity of a predicate justification for the practice to render it constitutionally permissible. *See United States v. Ajmal*, 67 F.3d 12, 15 (2d Cir. 1995) ("Regardless of the procedures adopted by the district court to vet juror questions, there must be ample justification for adopting the disfavored practice in the first instance. To hold otherwise would sanction juror questioning of witnesses in any circumstance, so long as appropriate prophylactic measures are adopted."). That the practice may find favor with jurors is an insufficient justification for allowing it.

In addition to failing to articulate, on the record, a sufficiently compelling rationale for allowing juror questioning, the district court's prophylactic measures did not adequately protect the integrity of the fact-finding process. At the close of each witness' testimony, the district court

---

[1] The government, like the majority, also attempts to make the unavailing comparison that the district court itself has wide discretion to question witnesses. *See* U.S. Br. at 17. However, one surely cannot compare questioning by a court officer uniquely empowered to discern and declare the law with questioning by a jury of laypersons. *See DeBenedetto*, 754 F.2d at 516 ("One simply cannot compare the questioning by the trial judge – who is trained in the law and instructed to 'see that justice is done' – with the questioning by members of the jury – who are untutored in the law, and instructed to sit as a neutral fact-finding body.").

---

**CONCURRENCE**

---

NATHANIEL R. JONES, Circuit Judge, concurring. While I concur generally in the Court's well-reasoned analysis, I thought it necessary to underscore that juror questioning is permissible only in the most rare and compelling of circumstances. Moreover, even on those extraordinary occasions when the practice is allowable, it must be narrowly tailored to achieve legitimate juridical objectives in a way that does not prejudice the defendant's right to a fair trial. *See United States v. Bush*, 47 F.3d 511, 515 (2d Cir. 1995) (providing that juror questioning should be "strongly discourage[d]"); *United States v. Cassiere*, 4 F.3d 1006, 1018 (1st Cir. 1993) ("[Juror questioning] should be reserved for exceptional situations, and should not become the routine, even in complex cases."); *United States v. Lewin*, 900 F.2d 145, 147 (8th Cir. 1990) ("[The court] does not condone the practice of inviting juror questions."); *DeBenedetto by DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 516 (4th Cir. 1985) (holding that because "the practice of juror questioning is fraught with dangers which can undermine the orderly progress of the trial," it should be used only in "compelling circumstances"). Even if a defendant shows that a district court improperly allowed juror questioning, however, the defendant must also show that the practice prejudiced his right to a fair trial. *See DeBenedetto*, 754 F.2d at 517. In the context of due process challenges to the fairness of a trial, prejudice analysis generally requires a defendant to demonstrate that the purported constitutional violation affected the trial's outcome. *See United States v. Rogers*, 118 F.3d 466, 475 (6th Cir. 1997); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

While the defendants in this case have not demonstrated that the allowance of juror questioning prejudiced their right to a fair trial, it nevertheless is apparent that the district court erred in permitting the practice at all. Without forewarning

*1.    Complexity of Case*

Defendants first contend that juror questioning should be reserved for complex cases, and maintain that their case was not sufficiently complex. The United States Court of Appeals for the Second Circuit has held that a case should present sufficiently extraordinary or compelling circumstances to justify questioning of witnesses. *See Ajmal*, 67 F.3d at 14; *see also Sutton*, 970 F.2d at 1006 (relying on factual complexity of case as factor in conclusion that trial court did not err in allowing juror questioning). *Ajmal* found an abuse of discretion in a district court's decision to invite juror questioning when such questioning was "not necessitated by the factual intricacies of th[e] banal drug conspiracy" and was not prompted by the urging of the jurors themselves. *Id.* at 14-15. The court was not swayed by the fact that the district court followed procedures previously set out by the Second Circuit for juror questioning because "such measures alone cannot purge the harm caused by the extensive juror questioning in the case at hand." *Id.* at 15 ("To hold otherwise would sanction juror questioning of witnesses in any circumstance, so long as appropriate prophylactic measures are adopted. We cannot accept such a proposition."). Defendants in the present case point out that the government's evidence involved only eyewitness recollection, testimony concerning conversations with defendants, and simple forensic reports; defendants simply presented an alibi defense.

The government has not suggested the case was complex. Instead, the government appears to argue that the important question is whether the questioning prejudiced a party in a way that affected the outcome of the litigation. *See United States v. Gray*, 897 F.2d 1428, 1429 (8th Cir. 1990); *see also United States v. Bascope-Zurita*, 68 F.3d 1057, 1064 (8th Cir. 1995) (focusing on absence of argument by defendant that he was prejudiced by questioning; not raising or addressing question of complexity of case involving cocaine conspiracy).

Although this court has not addressed the propriety of juror questioning, we have evaluated the practice of questioning by judges. In that context, we have indicated that a trial judge may be warranted in asking questions in a trial for three reasons: (1) for clarification in a lengthy, complex trial; (2) for clarification if the attorneys are unprepared or obstreperous, or if the facts are becoming muddled and neither side is succeeding at attempts to clear them up; and (3) if a witness is difficult, if a witness' testimony is unbelievable and counsel fails to adequately probe, or if the witness becomes inadvertently confused. *See United States v. Slone*, 833 F.2d 595, 597 (6th Cir. 1987). While there are risks in the jurors' perception of judge-initiated questions, such questions may be appropriate to get to the truth of the matter. Complexity is only one reason why a judge might reasonably pose questions to a witness. The rationale behind allowing questions by judges also operates in the context of questions by jurors, albeit with greater possible risks.[1]

While juror questioning should be a rare practice, there will be occasions when a district court may determine that the potential benefits to allowing such questions will outweigh the risks. Even cases that could not be described as complex may occasionally warrant questions by jurors, although we think that the balance of risks to benefits is more likely to weigh in favor of juror questions in complex cases.

With respect to complexity, defendants have argued only that juror questions should be reserved for complex cases. As the above discussion reveals, while the complexity of a case

---

[1]One court has indicated that juror questions are neither analogous nor comparable to questioning of witnesses by a judge. *See DeBenedetto*, 754 F.2d at 516. In *DeBenedetto*, the court stated that "[o]ne simply cannot compare the questioning by the trial judge – who is trained in the law and instructed to 'see that justice is done' – with the questioning by members of the jury – who are untutored in the law, and instructed to sit as a neutral fact-finding body." *Id.* We believe that this concern can be addressed by instructions to the jury regarding their role in the case and by the screening procedures described in this opinion.

may be warranted so that a 18 U.S.C. § 924(c) conviction does not result in a decrease in total punishment of a defendant. However, such a departure "shall not exceed the maximum of the guideline range that would have resulted had there not been a count of conviction under" 18 U.S.C. § 924(c). U.S. SENTENCING GUIDELINES MANUAL § 2K2.4 comment. (n.2). Collins suggests that the note must be interpreted to mean that a court cannot depart to a level that would include any months over the maximum permissible range.

We think a better interpretation of the note, in light of its context and intent, is that the actual sentence given cannot exceed the maximum range. *Cf. United States v. Oliver*, 60 F.3d 547, 556 (9th Cir. 1995) (holding that court erred in increasing sentences to 360 months when the maximum guideline range was limited to 300 months); *United States v. Bias*, Nos. 96-50483, 96-50499, 1998 WL 708772, **7-8 (9th Cir. Oct. 6, 1998) (unpublished) (holding that total sentence of 235 months was not facially excessive because it was within the range allowed under note 2; remanding because district court failed to articulate factual or legal basis for sentence); *United States v. Edmond*, Nos. 95-10322, 95-10342, 95-10365, 95-10400, 1996 WL 490188, **4 (9th Cir. Aug. 27, 1996) (unpublished), *cert. denied*, 119 S. Ct. 1069 (1999) (focusing on the number of months in excess of the maximum to which defendants were sentenced; indicating that court could have departed upward only a certain number of months for each defendant). Collins does not argue that his actual sentence exceeded the maximum range, nor do we see any indication in the record that would support such an assertion. Therefore, we find that the district court did not err in departing upward two levels under note 2 of guideline § 2K2.4.

**III.**

For the foregoing reasons, the rulings of the district court with respect to allowing questions from jurors and calculating Collins' sentence are **AFFIRMED**.

*DeBenedetto*, 754 F.2d at 515 n.1 (noting that counsel were given the opportunity to re-question each witness after all inquiries from the jury were resolved). The prudence of allowing such re-questioning will depend on the circumstances of each case. Furthermore, while jurors generally should not be allowed to submit questions until the end of a witness' testimony, a court may occasionally determine that questions properly could be posed in the midst of testimony, such as when a witness testifies at great length on a number of topics, or when a witness is testifying as to a technically complex matter. Finally, a court should consider whether final instructions should specifically address juror questions.

Accordingly, under the circumstances of this case, it cannot be said that the district court abused its discretion in allowing juror questioning. Nor do we find an abuse of discretion in the court's implementation of measures to minimize the potential risks of allowing such questions. We have reviewed the juror questions cited by defendants and find nothing improper in the questions that were posed by the court; nor do we find reason for concern in the questions that were proposed, but not asked.

B.    *Sentence under Guideline § 2K2.4*

Collins argues that the upward departure the district court imposed in reliance upon the second paragraph of note 2 to guideline § 2K2.4 is excessive. He maintains that the maximum range up to which the court could depart was 168 to 210 months. By adding two levels to bring him up to a level 30, and then adding the 60 months for the 18 U.S.C. § 924(c) conviction, the court placed Collins in a range of 181 to 211 months. He points out that this range extends one month higher than the maximum allowed by note 2. For this reason, he argues that the court could depart upward only one level.

In essence, Collins' argument focuses on what is meant when the application note refers to the "maximum of the guideline range." The note indicates that an upward departure

should be one consideration, an absence of complexity should not render juror questioning *per se* reversible error.

2.    *Prophylactic Measures*

Defendants next argue that the court did not implement adequate safeguards to address the risks inherent in juror questioning. Examples of prophylactic measures can be found in *Sutton*, 970 F.2d at 1005-06, which suggests that: (1) counsel should be alerted to the court's intention to allow juror questioning at the earliest practicable time and given an opportunity to be heard in opposition to the practice; (2) the jury should be instructed that questions are to be reserved for important points, that the rules of evidence may frequently require the court to eschew certain questions, and that no implication should be drawn if a juror-inspired question withers on the vine; (3) the court should include a prophylactic instruction in its final charge to the jury; and (4) a screening mechanism should be set in place, such as having the jurors write down their questions and pass them to a judge, followed by a sidebar at which the judge would rule on attorneys' objections.

Defendants maintain that because the record does not reveal that counsel learned of the court's intention to allow jurors to ask questions until the first day of trial, defense counsel had no time to object to the court's anticipated use of juror questions or contemplate changes to trial strategies. Defendants have failed to explain, however, why they could not object to juror questions on the first day of trial or how the juror questions may have undermined their trial strategy. *See Sutton*, 970 F.2d at 1007. In general, however, we think that a court should attempt to balance the risks and benefits of juror questions before trial and, when the balance weighs in favor of such questions, inform counsel as soon as possible.[2]

---

[2]Although a court may occasionally determine only after a trial has begun that juror questions should be allowed, we believe that it would be imprudent to begin every trial in anticipation of such a possibility with an assertion that the court does not have a policy prohibiting questions by

Defendants also argue that the court did not properly inform the jurors of the purpose of their questioning or explain that they should limit their questions to important points, not draw any inferences from unasked questions, and only ask questions seeking clarification rather than attempting to investigate a matter further. The judge in the present case instructed jurors that they could ask a question if a witness finished testifying and the jurors had "some substantial question" in their minds. She also advised jurors that she would pose to witnesses only "appropriate" questions from jurors, and that questions she did not pose could not be asked for "technical/legal reasons." In the court's preliminary and final instructions, jurors were admonished that, when the court sustained an objection to a question, they were to ignore the question and not guess at its answer. Therefore, the court did substantially address the concerns raised by defendants.

According to defendants, the court did not mention juror questions in final jury instructions. Yet there is no indication in the record that defendants requested such an instruction. In light of the court's final instructions that jurors were to ignore questions for which objections had been sustained and that evidence consists only of sworn testimony, exhibits, and stipulations, we are unable to say any lack of an instruction specifically addressing juror questions amounted to plain error.

Finally, defendants maintain that the court improperly solicited questions from jurors by asking if the jurors had questions for each and every witness about to leave the stand. While the court's conduct in this regard did not amount to reversible error in this case, routine soliciting of questions could risk reversal under other circumstances. *Cf. United States v. Thompson*, 76 F.3d 442, 449 (2d Cir. 1996) (disapproving of the court's inviting juror questions as each witness was about to leave the stand).

jurors.

We note that the court did implement a screening process by having jurors write down their questions, which were then discussed and ruled upon at sidebar. In addition to keeping the jurors from learning of and thinking about questions that were not asked, such a process lessened any risk of alienation because the jurors whose questions were not asked did not know who asserted that the question was improper.

The above discussion reveals the standards we think a court should follow when considering juror questioning. Allowing juror questions should not become a routine practice, but should occur only rarely after the district court has determined that such questions are warranted. In exercising their discretion, trial judges must weigh the potential benefits of juror questioning against the possible risks and, if the balance favors juror questions, employ measures to minimize the risks. When a court decides to allow juror questions, counsel should be promptly informed. At the beginning of the trial, jurors should be instructed that they will be allowed to submit questions, limited to important points, and informed of the manner by which they may do so. The court should explain that, if the jurors do submit questions, some proposed questions may not be asked because they are prohibited by the rules of evidence, or may be rephrased to comply with the rules. The jurors should be informed that a questioning juror should not draw any conclusions from the rephrasing of or failure to ask a proposed question. Jurors should submit their questions in writing without disclosing the content to other jurors. The court and the attorneys should then review the questions away from the jurors' hearing, at which time the attorneys should be allowed an opportunity to present any objections. The court may modify a question if necessary. When the court determines that a juror question should be asked, it is the judge who should pose the question to the witness.

We also think it would be wise for a district court to consider several additional issues. The court should consider whether it wishes to allow counsel an opportunity to re-question a witness after a juror question has been posed. *See*