**UNITED STATES of America,**
**Appellee.**

v.

**Antonio L. VENABLE, Appellant.**

**No. 00–3089.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 13, 2001.

Decided Nov. 6, 2001.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant. With her on the brief was A.J. Kramer, Federal Public Defender. Valencia R. Rainey, Assistant Federal Public Defender, entered an appearance.

Suzanne Grealy Curt, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, and John R. Fisher, Roy W. McLeese III, and James G. Flood, Assistant U.S. Attorneys.

Before: TATEL and GARLAND, Circuit Judges, and WILLIAMS,* Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

A jury found Antonio Venable guilty of one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Venable challenges his conviction on the ground that, during closing argument, the prosecutor improperly suggested that the jury could acquit Venable only if it disbelieved three government witnesses. Because defense counsel did not object to the prosecutor's statement, and because the statement did not rise to the level of reversible error under Federal Rule of Criminal Procedure 52(b), we affirm.

## I

On January 4, 2000, Talmadge Watson, the manager of a youth recreation center in the District of Columbia, made a 911 call to the Metropolitan Police Department. Watson reported that a man with a gun was inside the center. He described the person as a black male, wearing a black leather jacket, a baseball cap with the letter "P" on it, and dark trousers. That description was broadcast over the police radio.

Officer James Thomas responded to the broadcast and reached the recreation center at approximately 6:00 p.m. At trial, Thomas testified that, while walking toward the center, he saw a man leave the building who appeared to match the broadcast description. After noticing other police officers arrive on the scene, the man turned around and reentered the building. Officer Thomas then went into the center and, together with Officer Christopher Baxa, began to search for exits through which the suspect might have fled.

At this point, Watson, the manager who had made the original 911 call, approached Baxa and told him that the suspect was at the front door. Officers Thomas and Baxa went back to the front of the building and detained defendant Venable, who was standing at the door. Venable was wearing dark jeans and a baseball cap with the letter "P," but not the black leather jacket that Thomas had seen on the man previously standing outside. While the cold and misty weather warranted a coat, Venable was wearing only a T-shirt. Both Thomas and Baxa testified that, although they had not said a word about a black jacket, Venable spontaneously told them

---

* Senior Circuit Judge Williams was in regular active service at the time of oral argument.

that he did not have one and that he had not worn a coat to the recreation center that day.

The officers then began searching the center for the black leather jacket. Thomas soon found one, slightly wet, in a pile of coats on a pool table in the center's game room. According to Thomas' testimony, the jacket appeared to be the one worn by the man he had seen outside the center; Thomas did not, however, definitively identify Venable as that man. Wrapped inside the jacket, which contained no identifying information, was a loaded semi-automatic pistol.

At trial, Venable's prior felony conviction was the subject of a stipulation between the parties. The chief witnesses against the defendant were the two police officers, who testified as set forth above, and Watson, who testified that he had seen Venable with the gun. The jury was told that Watson himself had two prior convictions: for making a false statement or misrepresentation to the police involving the use of a false driver's license, and for attempted possession of PCP. The principal defense witnesses were two recreation center employees, who described themselves as friends of Venable. Derrall Joyner, an assistant manager at the center, testified that Venable had come into the center without a jacket and had never entered the game room. Jenine Davis, a recreation specialist, testified that, at a meeting she attended with Watson and defense counsel, Watson agreed that Venable had not been wearing a black jacket and had not been in the game room. Upon cross-examination, Watson denied making such a statement.

During closing argument, the prosecution maintained that Watson, despite his run-ins with the law, was a courageous man who deserved praise for his concern about the recreation center's safety, and who had no motive to notify the police

falsely that Venable had a gun. The prosecution further suggested that, by contrast, the defense witnesses had motives to fabricate because they were friends of Venable and because Joyner resented the police's intrusion into the center. The defense countered that Watson had lied in the past, and that the jury should instead believe Joyner and Davis.

In rebuttal, the Assistant United States Attorney continued to stress the credibility of the government's witnesses. He then made the statement that is at issue on this appeal: "For you to find Mr. Venable not guilty, you must disbelieve the testimony of Mr. Watson, Officer James Thomas, and Officer Baxa." Defense counsel did not object, and the jury convicted Venable of violating 18 U.S.C. § 922(g)(1).

## II

■■■ Because defendant's counsel did not object to the challenged statement, we review it only for plain error under Federal Rule of Criminal Procedure 52(b). *See Johnson v. United States,* 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). That standard requires: "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Id.* at 467, 117 S.Ct. 1544 (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). The third condition "in most cases ... means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. Moreover, it is "the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* Finally, "[i]f all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson,* 520 U.S.

at 467, 117 S.Ct. 1544 (quoting *Olano,* 507 U.S. at 732, 113 S.Ct. 1770) (other citations omitted).

## A

■ Venable contends that the prosecutor's remark was plain error because it had the effect of "diluting" the government's burden of proof.[1] Read with a grammarian's eye, the prosecutor's statement was surely error. Telling the jury that in order to acquit Venable it would have to disbelieve Watson, Thomas, *and* Baxa was logically equivalent to saying that the jury would have to convict Venable if it believed Watson, Thomas, *or* Baxa. That proposition was false. The testimony of Thomas or Baxa alone might well have been insufficient to find the defendant guilty and, in any event, would certainly not have compelled a guilty verdict. Moreover, the prosecutor was wrong not just in using the conjunction "and," but also in using the verb "disbelieve." The jury did not need to disbelieve Watson or any other witness to acquit Venable. Reasonable doubt about Venable's guilt was all that was required. *Cf. United States v. Rawlings,* 73 F.3d 1145, 1148–49 (D.C.Cir. 1996) ("[T]he jurors were not, as the court erroneously instructed, required to decide whom to believe.... They had to determine only whether the Government proved what it alleged had happened beyond a reasonable doubt.").

■ To conclude that the prosecutor's statement was technically erroneous, however, is not to conclude that the error was plain—i.e., "clear" or "obvious," *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. Neither courts nor juries parse extemporaneous remarks in closing argument as closely as sentences in carefully drafted legal documents. Indeed, even in such documents

authors sometimes use the word "and" to convey the meaning of "or"—and vice versa. *See, e.g., Varel v. Banc One Capital Partners, Inc.,* 55 F.3d 1016, 1020–21 (5th Cir.1995) (holding that the word "and" in a contract may mean "or"); *see also, e.g., De Sylva v. Ballentine,* 351 U.S. 570, 573, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) ("We start with the proposition that the word 'or' is often used as a careless substitute for the word 'and.' "). Likewise, the word "disbelieve" may be used loosely to indicate doubt rather than actual disbelief. In fact, in their written brief in this case, defendant's appellate counsel used the word in just that way. Focusing on the prosecutor's error in stating that the jury could not acquit unless it disbelieved Watson, Thomas, and Baxa, appellate counsel erroneously conceded that it was, however, "essentially correct to say that the jury could not acquit unless it disbelieved Watson." Appellant's Br. at 13. Appellate counsel's inaccurate formulation, contained in a brief they had ample time to craft, only underscores why statements made in the heat of oral argument are not and cannot be read with an editor's red pencil in hand. *Cf. Donnelly v. DeChristoforo,* 416 U.S. 637, 646–47, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (cautioning that a court should not lightly infer that a jury will draw the most damaging meaning from a prosecutor's remark in closing argument).

■ In assessing the import of a statement made in closing argument, context is key. And in the context of the prosecutor's entire argument in this case, it is not clear that the jury would have understood his statement to mean that crediting the testimony of any of the three witnesses would compel conviction. To the contrary, the prosecutor stressed the centrality of

---

1. The defendant concedes "that the prosecutor did not set out to intentionally dilute the government's burden of proof, and would

surely not have made the misstatement if he had thought it through." Appellant's Reply Br. at 5.

Watson's testimony, acknowledging that without Watson the government would not have had a case against Venable. Tr. at 270. Similarly, we hesitate to find that the jury would clearly have understood the prosecutor to say that acquittal required the jury's "disbelief" in the literal sense—rather than reasonable doubt on the ultimate question of Venable's guilt—since the prosecutor also noted the government's burden of proving guilt beyond a reasonable doubt. *Id.* at 258; *cf. United States v. Spencer*, 25 F.3d 1105, 1110 (D.C.Cir. 1994) (holding that where a district court instructed the jury that it must decide whether the government's or the defendant's witnesses were lying, but had earlier given a proper instruction regarding the burden of proof, the "jury could not have construed the court's remark to mean that the defendant had the burden of proof, unless it ignored the court's other instructions"). Accordingly, we conclude that although the prosecutor's statement was erroneous, in context it was not plainly so.

## B

 Even if the prosecutor's error were plain, to warrant reversal of Venable's conviction it would also have to have prejudiced the outcome of the trial. *See Olano*, 507 U.S. at 734, 113 S.Ct. 1770. In evaluating the potential prejudice from an improper statement in closing argument, this court typically looks to the centrality of the issue affected, the severity of the prosecutor's misconduct, the steps taken to mitigate the misconduct, and the closeness of the case. *See United States v. Gartmon*, 146 F.3d 1015, 1026 (D.C.Cir.1998); *United States v. North*, 910 F.2d 843, 895 (D.C.Cir.1990). Considering those factors, we do not find the kind of prejudice necessary to justify vacating Venable's conviction.

 Although the issue affected by the prosecutor's comment, the government's burden of proof, was as central to this case as it would be to any case, the prosecutor's misstatement cannot be characterized as severe. As noted above, in context it is not clear that the jury would have understood the prosecutor as misstating (or diluting) the government's burden. Moreover, the offending comment consisted of a single sentence in the course of a closing that was otherwise devoted to proper argument regarding why the government witnesses were believable and the defense witnesses were not. As we held in *United States v. North*, "[w]ithout other compelling factors, a single misstatement confined to a closing argument rarely amounts to severe misconduct." 910 F.2d at 897.

There are no such compelling factors here. To the contrary, the prosecutor's misstatement was mitigated by the court's twice-delivered instructions that the "law doesn't require a defendant to prove his innocence, produce evidence or testify," and that the burden of proof "is on the Government to prove the defendant guilty beyond a reasonable doubt and that burden of proof never shifts throughout the trial," Tr. at 19 (initial instructions); *id.* at 275 (final instructions). *See United States v. Catlett*, 97 F.3d 565, 573 (D.C.Cir.1996) (holding that the same burden-of-proof instruction as that used here cured any confusion caused by a prosecutor's remark that the jury could have understood as burden-shifting); *United States v. Trapnell*, 638 F.2d 1016, 1026 (7th Cir.1980) (finding no plain error where, although the prosecutor made a remark similar to that challenged here, "the trial court's instructions unambiguously place[d] the burden of proof on the government"). The impact of the misstatement was still further reduced by the judge's instructions that it was the court's responsibility to apprise the jury as to the law, and that the lawyers' statements were merely argument. *See generally Gartmon*, 146 F.3d at 1026; *United*

*States v. Gatling,* 96 F.3d 1511, 1524 (D.C.Cir.1996).

Finally, although the evidence against Venable was not overwhelming, it was sufficiently strong, in light of the foregoing factors, to undermine the assertion that the outcome of the trial was affected by the prosecutor's statement. Watson's eyewitness testimony regarding Venable's possession of the weapon (together with the stipulation that Venable had a felony conviction) established all of the elements of the crime. And while Watson was not an unimpeachable witness, the defense did not suggest any motive for him to accuse Venable falsely. Moreover, Watson's testimony was corroborated in important parts by both the officers' testimony and Venable's own spontaneous utterance. The officers' observations supported the prosecution's theory that Venable removed his jacket—wet from the mist outside—and wrapped the gun in it when he saw them coming. And Venable's declaration that he had not worn a black jacket that day—at a time when the officers had not yet said a word about a jacket—was a classic example of "protesting too much."

Weighing all these factors, we conclude that the defendant has not met his burden, under the third prong of the plain error standard, to establish prejudice arising from the prosecutor's error. Thus, there is no need for us to consider how Venable would fare under the fourth prong of the standard, which further requires him to establish that the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson,* 520 U.S. at 467, 117 S.Ct. 1544 (quoting *Olano,* 507 U.S. at 732, 113 S.Ct. 1770) (other citations omitted).

### III

In the context in which it was made, the prosecutor's erroneous misstatement of the standard for acquittal was neither plain nor prejudicial. Accordingly, the defendant's conviction is

*Affirmed.*