# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 19, 2008        Decided April 15, 2008

No. 06-3087

UNITED STATES OF AMERICA,
APPELLEE

v.

FRANCO JEFFERSON RAWLINGS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00456-2)

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for the appellant. *A. J. Kramer*, Federal Public Defender, was on brief.

*Louis Ramos*, Assistant Unites States Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney, and *Roy W. McLeese III*, Assistant United States Attorney, were on brief.

Before: HENDERSON, TATEL and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Franco J. Rawlings appeals his conviction of one count of felon in

possession of a firearm and ammunition on the grounds that the trial judge improperly permitted the jurors to submit questions directed to trial witnesses and that the prosecutor's closing argument improperly bolstered the credibility of the Government witnesses and shifted the burden of proof to the defendant. Rawlings did not object to the judge's questioning of jurors or the prosecutor's argument and we find no plain error in either. We therefore affirm Rawlings's conviction.

## I.

Viewed in the light most favorable to the Government, *see United States v. Roy*, 473 F.3d 1232, 1233 (D.C. Cir. 2007), the evidence establishes the following facts. About 5:30 p.m. on October 13, 2004, District of Columbia Metropolitan Police Department Detective Kevin Copeland and Officer Harry Allen were in separate cars in a supermarket parking lot in the 1600 block of Maryland Ave., N.E. when they observed Rawlings drive a white car into the parking lot and then drive out again shortly thereafter. Allen, who was in plain clothes, and Copeland, wearing a bullet-proof vest displaying the word "POLICE" in large capital letters, gave chase in their separate unmarked cars. Allen took the lead and Copeland followed close behind, with a flashing red police light on his dashboard.

While being chased, Rawlings ran a red light at the intersection of 17th Street and Massachusetts Avenue, S.E. and collided with a car driven by Julio Orozco. Rawlings lost control of his car which then ran up onto the curb. He climbed out of the car and began to run. According to the testimony of Copeland and Aretha Holland—a social worker at the nearby Boys and Girls Club who ran outside when she heard the crash—Rawlings emerged from the car carrying a gun, which he

threw to the ground as he passed the front of his car.[1] Neither Allen nor Orozco recalled seeing a gun. Rawlings continued to run across Massachusetts Avenue, with Copeland and Allen in pursuit, and then came to a stop. The officers ordered Rawlings to the ground and, when he did not comply, they forced him down and handcuffed him. Allen then returned to the front of Rawlings's car and located the gun on the ground where Copeland told him Rawlings tossed it. A crime scene technician arrived a short time later and took custody of the gun, a loaded Glock semi-automatic .45 caliber pistol.

Rawlings's trial began on December 20, 2005. Immediately beforehand, defense counsel moved orally to preclude the Government from making reference to the circumstances that brought Rawlings and the two officers to the parking lot on October 13, 2004. Rawlings had driven there with a passenger–Ricardo Lacy–who had arranged to sell phencyclidine and cocaine base to a man who, unbeknownst to him, was an undercover police officer. Copeland and Allen were there in connection with the undercover drug transaction. When Lacy attempted to make the sale, he was arrested and Rawlings drove off. The Government, with the judge's approval, agreed not to elicit testimony about the drug transaction.

On January 9, 2006, a jury convicted Rawlings of one count of unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and acquitted him of one count of assaulting a police officer in violation of D.C. Code § 22-405(b). On May 19, 2006 the district court sentenced Rawlings to 120 months' imprisonment. Rawlings filed a notice of appeal on May 30, 2006.

---

[1]According to Copeland, Rawlings crouched down and looked toward Copeland before tossing the gun. 12/20/05 Tr. 76. Holland testified Rawlings briefly pointed the gun directly at Allen before he tossed it. *Id*. 198.

## II.

Rawlings contends his conviction should be reversed based on (1) the judge's practice of allowing jurors to submit questions to be asked of witnesses and (2) improper closing arguments by the prosecutor. We address each ground separately.

### A. *Juror Questions*

Rawlings first objects to the judge's practice of permitting jurors to submit questions in writing for the judge to ask the witnesses. At the beginning of the trial, the judge advised the jury as follows:

> I do permit jurors to ask questions. . . .
>
>    . . . We will get you some 3 by 5 cards so you can, if you deem it appropriate, ask questions.
>
>    I can't let you ask questions the way the lawyers do verbally, but if you have a question, just take a 3 by 5 card and write down what your question is. I will review that with the lawyers. If I think it's an appropriate question, I will ask it. If I think it's not an appropriate question, I will not ask it.
>
>    And that's why we do not let jurors verbally ask questions because most of you are not legally trained and may not know some of the nuances of the law and, therefore, not appreciate what are appropriate or inappropriate questions. And, therefore, I have to have you write them down, review them with the lawyers, and decide whether they're appropriate.
>
>    If I decide not to ask a question, the juror who asked that question has to disregard the fact that they even asked it and cannot speculate or guess as to what the answer would have been.

12/20/05 Tr. 41-42. Because Rawlings did not object to the judge's instruction, we review his challenge for plain error. *See United States v. Perry*, 479 F.3d 885, 892 (D.C. Cir. 2007) (plain error review of jury instruction not objected to). Under the plain error standard,

> we will remedy a trial court error only if there is "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights[ ]' . . . [and] (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting [*United States v Olano*, 507 U.S. 725, 732 (1993)]). An error "affec[ts] substantial rights" if it is "prejudicial" or "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734.

*Id*. (full *Olano* citation added; other alterations in original). There was no plain error here.

Rawlings urges that the court "establish a bright-line rule forbidding jurors to pose questions for the witnesses," relying on cases from other circuits that warn of the risks involved in allowing jurors to pose questions to witnesses. Appellant's Br. 25. At the same time, however, Rawlings concedes that "[e]very Court of Appeals to address this issue has determined that it is a matter within the discretion of the trial court, and that it is not prejudicial *per se*." *Id*. 22. As of the time of trial, at least ten circuits had considered the issue and concluded that juror questions are within the trial judge's discretion. *See United States v. Sutton*, 970 F.2d 1001, 1005 (1st Cir. 1992); *United States v. Bush*, 47 F.3d 511, 515 (2d Cir. 1995); *United States v. Hernandez*, 176 F.3d 719, 723 (3d Cir. 1999); *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 516 (4th Cir. 1985); *United States v. Callahan*, 588 F.2d 1078, 1086 (5th Cir. 1979); *United States v. Collins*, 226 F.3d 457, 461 (6th Cir. 2000); *United States v. Feinberg*, 89 F.3d 333, 337 (7th Cir.

1996); *United States v. Groene*, 998 F.2d 604, 606 (8th Cir. 1993); *United States v. Gonzales*, 424 F.2d 1055, 1056 (9th Cir. 1970); *United States v. Richardson*, 233 F.3d 1285, 1288-89 (11th Cir. 2000). Given the unanimous view of ten sister circuits and the absence of law in this Circuit, Rawlings cannot establish that the trial judge's practice constituted an error that was " 'plain' or 'obvious' under the law as it stood at the time of trial" under the second prong of the plain error standard. *See United States v. Spriggs*, 102 F.3d 1245, 1260 (D.C. Cir. 1996) (finding no plain error in jury instruction that was "consistent with the approach taken by several other circuits at the time"). Further, we conclude the judge's practice was not error at all under the plain error standard's first prong.

We agree with our sister circuits that whether to allow jurors to question witnesses is a matter within the trial judge's discretion. As other courts have observed, the practice offers substantial benefits. For example, it can help focus the jurors, clear up confusion, alert counsel to evidentiary lacunae and generally ensure that the jurors have the information needed to reach a reasoned verdict. *See United States v. Collins*, 226 F.3d at 462; *United States v. Bush*, 47 F.3d at 514, 516; *United States v. Sutton*, 970 F.2d at 1005 n.3; *United States v. Callahan*, 588 F.2d at 1086. We also agree with other circuits, however, that the practice carries significant risk:

> There are a number of dangers inherent in allowing juror questions: jurors can find themselves removed from their appropriate role as neutral fact-finders; jurors may prematurely evaluate the evidence and adopt a particular position as to the weight of that evidence before considering all the facts; the pace of trial may be delayed; there is a certain awkwardness for lawyers wishing to object to juror-inspired questions; and there is a risk of undermining litigation strategies. In light of jurors' lack of knowledge of the rules of evidence, a

juror question may be improper or prejudicial. When a court declines to ask a question, the questioning juror may feel that her pursuit of truth has been thwarted by rules she does not understand. Concern has also been expressed over a risk that a sense of camaraderie among jurors may lead them to attach more significance to questions propounded by fellow jurors than those posed by counsel.

*United States v. Collins*, 226 F.3d at 461-62 (citations omitted); *see also United States v. Richardson*, 233 F.3d at 1290; *United States v. Feinberg*, 89 F.3d at 336-37; *United States v. Bush*, 47 F.3d at 516-17; *United States v. Groene*, 998 F.2d at 606; *United States v. Sutton*, 970 F.2d at 1005; *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d at 516. To minimize these risks, a district judge who decides to permit questioning by jurors in a given case should implement specific precautionary procedures.

First, the court should inform counsel in advance that juror questions will be allowed, should require that all juror questions be submitted in writing, should review them with counsel out of the presence of the jury (evaluating objections, if any) and then, if it finds the question proper, should itself ask the question of the witness. *See United States v. Richardson*, 233 F.3d at 1290-91; *United States v. Collins*, 226 F.3d at 464; *United States v. Feinberg*, 89 F.3d at 337; *United States v. Bush*, 47 F.3d at 516; *United States v. Groene*, 998 F.2d at 606. In addition, before any questioning begins, the court should instruct the jurors about the function of the questioning procedure in clarifying factual (not legal) issues and should direct them to remain neutral and, if the judge fails to ask a particular question, not to take offense or to speculate as to the reasons therefor or what answer might have been given. *See United States v. Collins*, 226 F.3d at 464-65; *United States v. Sutton*, 970 F.2d at 1005. Then, after a particular witness has responded to the questions, the court

should permit counsel to re-question the witness. *See United States v.* Collins, 226 F.3d at 465; *United States v. Hernandez,* 995 F.2d 307, 312 (1st Cir. 1993); *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d at 515 n.1. We also think it prudent to repeat the instructions in the closing charge. Because the judge in this case scrupulously adhered to these prophylactic procedures, we conclude that his practice of asking juror questions was not an abuse of discretion even had Rawlings objected to it. *See United States v. Collins*, 226 F.3d at 465 ("Nor do we find an abuse of discretion in the court's implementation of measures to minimize the potential risks of allowing such questions."); *United States v. Hernandez*, 76 F.3d at 723 ("The procedure utilized here is consistent with our admonitions and consistent with the sound exercise of judicial discretion."); *United States v. Callahan*, 588 F.2d at 1086 n.2 ("There was no error committed in allowing the question to be asked, and the procedure employed of requiring jurors to put their questions in writing and clear their relevancy with the court was not an abuse of the court's discretion to conduct the trial fairly."). Nonetheless, this case illustrates just how perilous it can be for the court to routinely solicit and ask juror questions.

Notwithstanding all of the judge's precautions, one of the juror questions he asked, although seemingly innocuous, invited possible prejudicial error. At one juror's request, the judge asked witness Copeland: "And why did you follow the vehicle out of the lot?" The following exchange ensued:

WITNESS: Because the vehicle was part of the actual—

COURT: But was there something about the movement of the vehicle that caused you to follow it?

OFFICER: Yes. Well, the vehicle was a part of the scene that had just transpired.

COURT: Well, was there something about the movement of the vehicle that caused you to follow it?

OFFICER: Yes. It sped off at a high rate of speed.

Tr. 12/20/05 at 185-86. Had the judge not quickly cut off Copeland's first response and rephrased the juror's question, Copeland might have testified on the very subject that counsel and the court agreed to avoid, namely, the planned drug transaction that Rawlings had facilitated. Because the court's corrective action prevented Copeland from testifying about the prohibited subject of the drug sale, the question, if error, was not plain error because it was not prejudicial so as to "affec[t] substantial rights" under the third prong of the plain error standard. *See Olano*, 507 U.S. at 734.[2] Nonetheless, prejudice was only narrowly averted. The episode highlights the risk of allowing jury questions during trial and demonstrates why other circuits have advised that they be used only sparingly. To limit such risk in the future, we, as have our sister circuits, advise trial judges to consider on a case-by-case basis whether and to what extent jury questions are appropriate, balancing the potential benefit of such questions against the dangers they pose. *See United States v. Collins*, 226 F.3d at 463 ("In general, . . . we think that a court should attempt to balance the risks and benefits of juror questions before trial . . . ."); *United States v. Richardson*, 233 F.3d at 1290 ("[I]n determining whether to permit juror questioning, the trial court should 'weigh the

---

[2]Had Rawlings objected at trial that this specific question was prejudicial or even generally objected to the practice of allowing juror questions before this question was asked, we would review the question itself for abuse of discretion rather than for plain error. *See United States v. Johnson*, 914 F.2d 136, 138 (8th Cir. 1990) (specific jury questions to which objection made at trial reviewed for abuse of discretion); *United States v. Richardson*, 233 F.3d at 1288 (juror questions asked after objection to general practice reviewed for abuse of discretion). He did not. *See* 12/20/05 Tr. 183 (Rawlings' objection to group of questions, including this one, as not "needed" because "probably" already asked).

potential benefit to the jurors against the potential harm to the parties, especially when one of those parties is a criminal defendant.' " (quoting *United States v. Feinberg*, 89 F.3d at 337)); *United States v. Callahan*, 588 F.2d at 1086 n.2 ("District courts must in each case balance the positive value of allowing a troubled juror to ask a question against the possible abuses that might occur if juror questioning became extensive."). Permitting juror questions as a matter of course is ill-advised. *See United States v. Collins*, 226 F.3d at 461 ("Allowing juror questions should not become a routine practice, but should occur only rarely after the district court has determined that such questions are warranted."); *United States v. Feinberg*, 89 F.3d at 337 ("There may be cases [in which] jurors should be allowed to ask questions in order to perform their duties as fact-finders. Of course those cases are the exceptions, not the rule. In the vast majority of cases the risks outweigh the benefits."); *United States v. Sutton*, 970 F.2d at 1005 ("[J]uror participation in the examination of witnesses should be the long-odds exception, not the rule."); *cf. United States v. Ajmal*, 67 F.3d 12, 14-15 (2d Cir. 1995) ("[T]he district court, as a matter of course, established at the outset of the trial that jurors would be allowed to question witnesses. . . . [T]he district court's solicitation of juror questioning absent a showing of extraordinary circumstances was an abuse of discretion.").

## B. Prosecutor's Closing Argument

Rawlings next contends the prosecutor's closing argument "overstepped the bounds of proper advocacy" in two respects. Appellant's Br. 27. First, Rawlings objects to the prosecutor's laudatory references to Government witnesses Allen, Copeland and Holland, who, the prosecutor stated, "should be applauded because what they have done is taken this weapon off the street," 12/23/05 Tr. 106, and whom he repeatedly characterized as having done the "right thing"—Allen and Copeland in their performance as police officers and Holland in getting "involved"

both "to help the police" and to make sure children from the nearby Boys and Girls Club were not "involved" in the automobile crash. *Id*. 98, 102, 105-06. He also objects to the prosecutor contrasting the conduct (and credibility) of Government witness Holland with that of defense witness Orozco: Of Orozco, the prosecutor remarked:

> That's why it was important when I asked whether or not [Mr. Orozco] talked to the police. "Did you tell them? Did you see anything? Did you have any contact with the police?" "No, I didn't," but five months later he had that contact with the defense investigator, which he signed a statement for.

12/23/05 Tr. 96-97. Of Ms. Holland, he observed:

> Since I have mentioned Mr. Orozco, let me mention Ms. Holland, another civilian waitress. Contrast her testimony with Mr. Orozco's. On that day, Ms. Holland—what did she do? She got involved. That's what this case is about. She heard something. She saw something. She went out, saw more things, and then told the police what she saw.

12/23/05 Tr. 97. Rawlings contends these remarks improperly urged the jurors "to slip out of their role as neutral arbiters of the facts and into the role of cheerleaders for Copeland, Allen and Holland." Appellant's Br. 28. Second, Rawlings claims the prosecutor effectively shifted the burden of proof to Rawlings when he argued that there was no evidence contradicting the Government's evidence of Rawlings's guilt: "I stood up here before in my opening statement. I said, 'This is a pretty simple case. The defendant did what we have alleged by way of indictment. The evidence will support it.' And there is no evidence to the contrary—not one single piece of evidence to the contrary. . . . There is not one shred of evidence that Officer Copeland didn't see what he said he saw." 12/23/05 Tr. 99-100.

Because Rawlings failed to object to the prosecutor's closing remarks, we again review only for plain error and again we find none. Rawlings has failed to establish that any of the challenged statements was prejudicial under the third prong of the plain error standard.

"To judge the prejudicial effect of a closing argument error we look to the severity of the alleged misconduct, the centrality of the issue affected by the error, the steps taken to mitigate the error, and the closeness of the case." *United States. v. Wilson*, 240 F.3d 39, 45 (D.C. Cir. 2001) (citing *United States v. Gartmon*, 146 F.3d 1015, 1026 (D.C. Cir. 1998)). In *United States v. Brown*, 508 F.3d 1066 (D.C. Cir. 2007), we found no plain error in the prosecutor's statements that, like the comments here, attempted to bolster the credibility of a Government witness. In that case, the prosecutor told the jury regarding a witness's testimony: "I believe her testimony regarding this defendant and his actions proves him guilty beyond a reasonable doubt. And her testimony had a ring of truth or a ring of trustworthiness that you could take to the bank." 508 F.3d at 1074. Although the court "h[e]ld that there was an 'error' that was 'plain,' " the court could not find that the error either "affected appellant's substantial rights" or "seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Id*. at 1076. The court gave two reasons for its conclusion: first, the evidence against the defendant was "quite strong" and, second, the trial judge gave the jurors instructions "making it clear that the prosecutor's personal beliefs were irrelevant." *Id*. In closing instructions to the jury, the judge there directed:

> You [jurors] are the sole judges of the facts. You alone decide what weight to give to the evidence presented during the trial, you decide the value of the evidence and you decide the believability of the witnesses. . . . The statements and arguments of the lawyers are not

> evidence. They are only intended to assist you in understanding the evidence. . . . You are the sole judge of the credibility of the witnesses; in other words, you alone are to determine whether to believe any witness, and the extent to which any witness should be believed.

*Id.* (record citations omitted). In this case too, the evidence against Rawlings was strong. The only disputed factual question was whether he was carrying a gun when he got out of the car. Both Copeland and Holland testified that he was and neither Orozco nor Allen contradicted their testimony—each of them testified only that he himself did not see a gun then. *See* 12/21/05 Tr. 100 (Allen); Tr. 12/23/05 Tr. 16-17 (Orozco). Allen testified without contradiction, however, that he found the gun next to the car, where Copeland told him Rawlings had dropped it. *Id.* 98-99, 127. Also, as in *Brown*, the trial judge here instructed the jurors that they alone were to determine the witnesses' credibility:

> You are the sole judges of the facts. You alone will decide what weight to give to the evidence presented during the trial. You decide the value of the evidence, and the believability of the witnesses. . . . [I]f any reference by myself or by the attorneys to evidence does not coincide with your own recollection of the evidence, it is your recollection which should control during your deliberations. . . . [T]he statements and the arguments of the lawyers are not evidence. They are only intended to assist you in understanding their position of what the evidence indicated. . . . You are the sole judges of the credibility or believability of the witnesses. In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed. . . . [A] police officer's testimony should be considered by you just as any other evidence in the case. In evaluating an officer's credibility, you should

use the same guidelines which you apply to the testimony of any other witness. In no event should you give either greater or lesser weight to the testimony of a witness because that witness happens to be a police officer.

12/23/05 Tr. 137-39, 143, 145. Accordingly, as in *Brown*, we conclude that any error in the prosecutor's bolstering remarks was harmless and that Rawlings has therefore failed to reach the "high threshold" the plain error standard imposes. *Brown*, 508 F.3d at 1076.

We likewise find no plain error in the prosecutor's comments on the absence of evidence contradicting the Government's case. The circumstances here are similar to those in *United States v. Catlett*, 97 F.3d 565 (D.C. Cir. 1996), in which the prosecutor began his closing argument with the following statement: " 'No witness came here from this busy street and says, "Folks, it didn't happen that day." ' " 97 F.3d at 573 (record citation omitted). In *Catlett*, we concluded the prosecutor's remark was not plain error, reasoning that "[e]ven if the prosecutor crossed the line of proper argument, . . . he did not thereby deprive the defendants of a fair trial" because at the end of the trial the judge gave an adequate curative instruction. *Id*. The trial judge had charged the jury: " 'The burden is on the prosecution, the government, to prove the defendants guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require the defendants to prove their innocence or to produce any evidence.' " *Id*. (record citation omitted). In *Catlett*, we concluded: "These instructions would have cured any confusion caused by the prosecutor's remarks." *Id*. (citing *United States v. Kim*, 595 F.2d 755, 768 (D.C. Cir. 1979)).

Similarly, in *United States v. Venable*, 269 F.3d 1086, 1091 (D.C. Cir. 2001), we found no plain error in the prosecutor's argument that, in order to acquit the defendant, the jurors would

have to " 'disbelieve the testimony' " of the Government witnesses. 269 F.3d at 1089. We reasoned that (1) "the offending comment consisted of a single sentence in the course of a closing that was otherwise devoted to proper argument," 269 F.3d at 1091; (2) it "was mitigated by the court's twice-delivered instructions that the 'law doesn't require a defendant to prove his innocence, produce evidence or testify,' and that the burden of proof 'is on the Government to prove the defendant guilty beyond a reasonable doubt and that burden of proof never shifts throughout the trial,' " *id*. (citing *United States v. Catlett*, 97 F.3d at 573); and (3) the evidence, while "not overwhelming . . . was sufficiently strong, in light of the foregoing factors, to undermine the assertion that the outcome of the trial was affected by the prosecutor's statement," *id*. at 1092.

In this case, we find no plain error for the same reasons. The claimed error consists of only a few sentences in the rebuttal argument and any effect they might otherwise have had was minimized when the judge subsequently gave an instruction similar to those in *Catlett* and *Venable*, directing the jury: "The burden is on the Government to prove the defendant guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence." 12/23/05 Tr. 141-142; *see also* 12/20/05 Tr. 25-26 (virtually identical instruction at start of trial). Given the curative instruction and the strength of the Government's case, we cannot say the prosecutor's comments constituted plain error.

Although we find no plain error in the prosecutor's statements regarding the Government witnesses' credibility or the absence of contradictory evidence, this is not to say his comments were proper. Had Rawlings preserved an objection or had the Government's case been weaker, our disposition

might well be different.  The Government is cautioned to avoid similar argument in the future.

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*