No. 04-5310

File Name: 05a0523n.06

Filed: June 17, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| ROBERT M. CANON, M.D., | ) DISTRICT OF TENNESSEE |
| | ) |
| Defendant-Appellant. | ) |

Before:     **NELSON** and **BATCHELDER**, Circuit Judges, and **O'MALLEY**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge. A jury found the defendant, a medical doctor, guilty of submitting fraudulent healthcare claims and making false statements in relation to healthcare matters. The defendant was sentenced to imprisonment for 41 months, and he has appealed the judgment of conviction and sentence .

The defendant raises five issues: (1) whether the district court abused its discretion by posing questions from jury members to one of the government's expert witnesses and allowing the government to recall the expert as a rebuttal witness; (2) whether the court abused its discretion by admitting certain evidence; (3) whether the cumulative effect of the

---

[*]The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

court's allegedly erroneous evidentiary rulings was to deprive the defendant of a fair trial; (4) whether there was sufficient evidence to support the defendant's convictions for making false statements; and (5) whether enhancement of the defendant's sentence on the basis of judicially determined facts violated the Sixth Amendment right to a jury trial.

We are not persuaded that the district court committed any error requiring reversal of the conviction. Under *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005), and *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), however, the enhancement of the defendant's sentence was plainly erroneous and requires a remand for resentencing.

I

The defendant, Robert M. Canon, M.D., is an orthopedic surgeon. He operated an office-based clinic for the management of neck and back pain. Dr. Canon's practice consisted primarily of giving injections of anti-inflammatory medications and steroids.

In September of 2002 a federal grand jury handed up an indictment charging Dr. Canon with 50 counts of healthcare fraud (violations of 18 U.S.C. § 1347) and 45 counts of making false statements in relation to healthcare matters (violations of 18 U.S.C. § 1035). The fraud counts charged that Dr. Canon billed Medicare and other healthcare benefit programs for "nerve block" injections when he had in fact administered "trigger point"

injections.[1] Medicare pays physicians significantly less for the latter procedure than for the former. The "false statement" counts charged that Dr. Canon misrepresented, through his use of billing codes and modifiers, the extent of the services he had provided to several patients. The total amount of Dr. Canon's fraudulent billings, according to the indictment, was $3,858,750.38.

A jury found Dr. Canon guilty of all charges. The doctor moved for a judgment of acquittal, arguing that the evidence was insufficient to support the jury's verdict, and for a new trial, arguing that the verdict was against the weight of the evidence and that several of the district court's evidentiary rulings were erroneous. The motions were denied.

At sentencing the government presented evidence that the total amount of Dr. Canon's fraudulent billings came to $3,183,710. The district court accepted that figure. The result was a 13-level increase in Dr. Canon's base offense level under U.S.S.G. § 2F1.1(b)(1)(N) (2000 edition). The court also found that Dr. Canon's offenses involved more than minimal planning and had more than one victim. These findings resulted in an additional two-level increase under § 2F1.1(b)(2) of the guidelines. The adjusted offense level yielded a guideline sentence range of imprisonment for 37 to 46 months. The court denied a defense motion for a downward departure and sentenced Dr. Canon to 41 months, the mid-point of the guideline range.

---

[1]A nerve block injection delivers medication directly to the affected nerve. It involves the insertion of a needle into or very near the joint between adjacent vertebrae. A trigger point injection delivers medication into muscular tissue.

Dr. Canon perfected a timely appeal. He is free on bond pending the completion of the appellate process.

II

Stephen Minore, M.D., testified at trial as an expert witness for the prosecution. After describing how he himself performs nerve blocks, Dr. Minore expressed the opinion, based on a review of patients' records, that the procedures performed by Dr. Canon were trigger point injections and not nerve blocks.

After a break in Dr. Minore's direct examination, the district court announced that some jurors had volunteered that they would like to ask questions. The court said that it would allow jurors to submit written questions, and that the court would then pose any questions it determined to be "appropriate."

Later, after Dr. Minore had been cross-examined but before any re-direct, the district court informed the parties' lawyers at sidebar that the jury had submitted questions for the witness. Over objection from counsel for Dr. Canon, the court asked Dr. Minore two quite pertinent questions "distilled" from those submitted by the jury. The parties were permitted to ask follow-up questions, and the defense did so. Dr. Canon now argues that the district court abused its discretion by posing the jury's questions to Dr. Minore.

This court has held that "allowing jurors to ask questions during criminal trials is permissible and best left to the discretion of the trial judge," although "the routine practice

of juror questioning should be discouraged." *United States v. Collins*, 226 F.3d 457, 461 (6th

Cir. 2000), *cert. denied*, 531 U.S. 1099 (2001). A number of precautions should be taken if

a district court decides to allow questioning by the jury:

> "When a court decides to allow juror questions, counsel should be promptly informed. At the beginning of the trial, jurors should be instructed that they will be allowed to submit questions, limited to important points, and informed of the manner by which they may do so. The court should explain that, if the jurors do submit questions, some proposed questions may not be asked because they are prohibited by the rules of evidence, or may be rephrased to comply with the rules. The jurors should be informed that a questioning juror should not draw any conclusions from the rephrasing of or failure to ask a proposed question. Jurors should submit their questions in writing without disclosing the content to other jurors. The court and the attorneys should then review the questions away from the jurors' hearing, at which time the attorneys should be allowed an opportunity to present any objections. The court may modify a question if necessary. When the court determines that a juror question should be asked, it is the judge who should pose the question to the witness." *Id.* at 464.

In the case at bar the initiative for allowing juror questions came from the jurors

themselves, not from the court. The request was dealt with in a manner consistent with

*Collins*, a case where the initiative had came from the court.

When jurors in the case at bar indicated that they would like to ask questions, the

court promptly notified the parties that it would entertain such questions. The court then told

the jurors that they could submit "really important" questions in writing, and it warned them

that some questions might not be appropriate because of "the rules of evidence." The court

reviewed the jury's questions with the lawyers away from the jury's hearing, and the lawyers

were given an opportunity to object.  Finally, the court itself posed the questions to the witness.

Dr. Canon argues that the *Collins* safeguards are insufficient when the witness is an expert testifying for the prosecution.  Emphasizing that the jury did not submit questions for any other witness, he contends that juror questioning of Dr. Minore "could only have tended to forge a sort of 'alliance' between Dr. Minore and the jury."

We do not think the risk of such an "alliance" was so great that the district court could not reasonably choose to allow the questioning.  Neither do we think that the court abused its discretion by posing the jury's questions before the government's re-direct of Dr. Minore.

Dr. Canon argues further that the alleged error of allowing juror questioning was compounded by the district court's letting the government recall Dr. Minore as a rebuttal witness.  But Dr. Canon concedes that "the recall of Dr. Minore may not have been reversible error viewed in isolation," and given the fact that there was no error to compound as far as jury questioning was concerned, the decision to allow Dr. Minore to be recalled did not necessitate the granting of a new trial.

III

A

Joan Syler, an investigator for Blue Cross-Blue Shield of Tennessee, testified at trial about a telephone conversation she had with Ellen Harrison, a billing consultant who had been hired by Dr. Canon. According to Ms. Syler, Ms. Harrison said that Dr. Canon was "upcoding" his office visits and did not seem to listen to Harrison's recommendations. Objections to this testimony under Rules 404(b) and 802, Fed. R. Evid., were overruled.

Ms. Syler's testimony does not appear to have been offered as "other acts" evidence in violation of Rule 404(b). The testimony was offered, rather, to show that Dr. Canon engaged in a continuing fraudulent scheme of which the specific billings listed in the indictment were a part. Significantly, the conversation between Ms. Harrison and Ms. Syler occurred within the time period during which the fraudulent scheme was alleged to have been in operation. We see no violation of Rule 404(b) here.

On the other hand, it is a little hard to see why Ms. Syler's testimony should not have been excluded as hearsay under Rule 802. The government cites Rule 801(d)(2)(D), Fed. R. Evid., which provides that a statement is not hearsay if (1) it is offered against a party, (2) it is a statement by that party's agent or servant, (3) it concerns a matter within the scope of the agency or employment, and (4) it was made during the existence of the relationship. But it is far from clear to us that Ms. Harrison, an outside consultant, was Dr. Canon's agent.

We need not resolve that question, however, because Dr. Canon has not shown that he was significantly prejudiced by the admission of Ms. Syler's testimony. The defense called Ms. Harrison as a witness, and she gave her own account of the conversation with Ms. Syler. As we have said elsewhere, "[t]he hearsay dangers underlying out-of-court statements offered for their truth – sincerity, memory and not under oath – are not present when the declarant takes the stand as a witness." *Moore v. KUKA Welding Systems & Robot Corp.*, 171 F.3d 1073, 1081-82 (6th Cir. 1999). Ms. Harrison's testimony at trial was sufficient to cure any error in the admission of the out-of-court statements.

B

Lana Lasater, a sometime Canon clinic employee who had gone on to work for another orthopedic surgeon, testified that the other surgeon occasionally performed the same sort of procedures that Dr. Canon performed. Ms. Lasater was then asked how those procedures were billed by the other surgeon. An objection on relevance grounds was overruled. Ms. Lasater testified that the other surgeon billed the procedures as trigger point injections.

Ms. Lasater's testimony strikes us as plainly relevant. Evidence that the procedures Dr. Canon billed as nerve blocks were billed by another orthopedic surgeon as trigger point injections makes it more probable that Dr. Canon's billings were fraudulent. See Fed. R. Evid. 401 (defining "relevant evidence").

On appeal, Dr. Canon argues that Ms. Lasater was not qualified to testify that the differently-billed procedures were in fact the same. This argument was not presented to the district court. (Indeed, Dr. Canon did not object at all when Ms. Lasater was asked whether the other surgeon performed the same procedures.) Moreover, we think that Ms. Lasater could properly testify to her perception that the procedures were the same. This was factual testimony about what she saw, not technical or scientific testimony. Finally, any flaws in Ms. Lasater's perception could have been probed on cross-examination. We see no abuse of discretion in allowing Ms. Lasater to testify as she did.

## C

The testimony of Amanda Smith, another former employee of Dr. Canon's clinic, was admitted at trial in the form of a videotaped deposition. Dr. Canon objected before trial to the admission of numerous portions of Ms. Smith's testimony, but the district court sustained only one of the objections. In the testimony that was admitted Ms. Smith said, among other things, that she took x-rays and performed physical therapy for Dr. Canon despite having only minimal training; that Dr. Canon's "bank called a lot;" and that she did not mention Dr. Canon's billing practices when interviewed by an investigator because she did not want to be fired. Dr. Canon argues that the admission of this testimony violated Rules 404(b) and 403, Fed. R. Evid.

It seems to us that none of the evidence in question was Rule 404(b) evidence, *i.e.*, evidence of other acts offered "to prove the character of a person in order to show action in conformity therewith." None of challenged testimony relates to other instances of fraud or the making of false statements.

On the other hand, the testimony concerning Ms. Smith's job duties and Dr. Canon's bank had little probative value, and it might have unfairly prejudiced Dr. Canon because of its tendency to suggest that he provides substandard care and does not pay his debts. The challenged testimony could probably have been excluded under Rule 403. That strikes us as a close call, however, and we are not prepared to say that the district court abused its discretion in allowing the testimony to come in.

As for Ms. Smith's testimony that she had kept quiet about Dr. Canon's billing practices to avoid being fired – testimony elicited by Dr. Canon's own lawyer – exclusion was not required. Dr. Canon contends that the testimony was non-responsive, but we think that the witness was entitled to explain her answer when asked repeatedly whether she had mentioned Dr. Canon's billing practices to the investigator. Again, we are not persuaded that there was an abuse of discretion.

IV

Dr. Canon argues that the cumulative effect of the district court's evidentiary rulings was to deny him a fair trial. It is true that "trial-level errors that would be considered

harmless when viewed in isolation of each other might, when considered cumulatively, require reversal of a conviction." *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 987 (2005). As we have indicated, however, we think that only one of the district court's evidentiary decisions – its decision to admit Joan Syler's testimony as non-hearsay – may have been in error. Absent additional errors, there can be no prejudicial cumulative effect. See *id.* (holding that an "accumulation of non-errors" will not warrant a new trial).

V

Dr. Canon challenges the sufficiency of the evidence that he billed for unperformed services on the specific dates, and for the specific patients, listed in the false-statement counts of the indictment (counts 51 through 95). Our task is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To establish Dr. Canon's guilt as to counts 51 through 95, the government had to prove that he knowingly and willfully made false statements "in connection with the delivery of or payment for health care benefits, items, or services" and in a "matter involving a health care benefit program." 18 U.S.C. § 1035(a)(2). More specifically, the government had to

prove that Dr. Canon knowingly overstated the extent of the services he provided on the dates listed in the indictment.

The government focused on Dr. Canon's use of a particular billing code, 99214-25. The first part of the code, 99214, denotes a "level four" office visit, with level one being the least extensive and level five being the most. The "-25" modifier denotes an additional, separate service performed during the office visit. At trial, Dr. Canon admitted that he knew he should not bill for both an injection and an office visit – *i.e.*, use billing code 99214-25 – unless he had provided a significant service that was separate from the injection. He maintained that he nearly always performed a separate service when seeing a patient to administer a shot. But one of the government's expert witnesses, Joanne Mehmert, testified that she had reviewed Dr. Canon's patient records for the dates listed in the indictment and that the documentation did not support Dr. Canon's use of the 99214-25 billing code on those dates. Her opinions were summarized in a chart that was admitted into evidence.

This evidence was sufficient, we believe, to support the jury's verdict. Dr. Canon argues that proof of a failure to document separate services does not amount to proof of a failure to perform those services. We think, however, that a rational jury could infer a failure to perform from a failure to document. Such an inference is supported by the testimony of other witnesses concerning the importance of chart documentation, as well as Dr. Canon's own testimony that he knew he needed to document any additional services. A finding that Dr. Canon did not perform all of the services for which he billed is consistent, moreover,

with Dr. Minore's testimony that the 99214-25 billing code is rarely used in a typical pain-management practice.

The government's case on counts 51 through 95 would have been stronger, to be sure, had the government presented unequivocal patient testimony to the effect that Dr. Canon did no more than administer injections on the dates in question. Speculation as to the availability of additional evidence, however, does not render the existing evidence insufficient. The government's case might not have been overwhelming, but we are satisfied that it was enough to support a verdict of guilty on counts 51 through 95.

VI

In *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005), the Supreme Court held that the Sixth Amendment forbids judicial determination of "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict . . . ." *Booker*, 125 S. Ct. at 756. In the case at bar the district court's factual determinations were necessary to support the 41-month sentence that the court imposed; absent those determinations, Dr. Canon's guideline sentence range would have been zero to six months. See U.S.S.G. Ch. 5, Pt. A (2000). Accordingly, Dr. Canon's sentence violates the Sixth Amendment as construed in *Booker*.

Dr. Canon did not make a Sixth Amendment argument in the district court. But our court has recently held that a Sixth Amendment violation under *Booker* constitutes "plain error" that may be corrected on appeal despite its forfeiture below. See *United States v. Oliver*, 397 F.3d 369, 378-81 (6th Cir. 2005). Under *Oliver*, this case must be remanded to the district court for resentencing. See *id.* at 381.

On remand, of course, the district court will be free to consider again enhancing Dr. Cannon's offense level under the guidelines as long as the resultant sentencing range is treated as advisory rather than mandatory. And in determining what constitutes a reasonable sentence for this defendant under 18 U.S.C. 3553(a), the district court may consider all of the facts that led to the enhancements imposed originally.

Dr. Canon's convictions are **AFFIRMED,** his sentence is **VACATED**, and the case is **REMANDED** for resentencing.